547 So.2d 330 (1989)
Linda G. BURTON, Appellant,
v.
Barry Dean POWELL and National Pulpwood Corporation, Appellees.
No. 89-92.
District Court of Appeal of Florida, Fifth District.
August 10, 1989.
*331 Ralph J. McMurphy of Green and Simmons, P.A., Ocala, for appellant.
Bryce W. Ackerman of Savage, Krim, Simons, Fuller & Ackerman, P.A., Ocala, for appellees.
COBB, Judge.
The appellant Linda Burton, plaintiff below, was the victim of a collision wherein her automobile was struck from behind by a truck owned by National Plywood Corporation and driven by Barry Dean Powell. Burton and Powell were stopped in tandem in a median strip between the north and southbound lanes of Highway 441, each attempting to enter the southbound lane in heavy traffic.
According to Powell, Burton drove forward as if to enter the highway, at which point he eased forward while looking to his right for oncoming traffic. When he turned back, Burton had stopped, and Powell ran into the rear of her car.
Powell's version of the collision fails to rebut or dissipate the presumption that his negligence was the sole proximate cause of the collision. Baughman v. Vann, 390 So.2d 750 (Fla. 5th DCA 1980). This is so because Burton's alleged start and stop obviously occurred at a time and place where it was reasonably to be expected. See Cowart v. Barnes, 370 So.2d 103 (Fla. 1st DCA), cert. denied, 379 So.2d 202 (Fla. 1979). It was error for the trial court to deny the plaintiff's motion for directed verdict on the issue of liability. Without any reasonable evidence pointing to Burton's contributory negligence, the liability of the appellees would of necessity have to be assessed at 100%.[1] As it turned out, the *332 jury allocated 40% of the negligence to the plaintiff, Burton.
The appellant also contends the trial court should have directed a verdict on the issue of the permanency of her injury. We disagree. Without belaboring the point, we simply reiterate the established precept that a jury is free in the ordinary negligence case to accept or reject the testimony of a medical expert just as it may accept or reject that of any other expert. Shaw v. Puleo, 159 So.2d 641 (Fla. 1964); LaBerge v. Vancleave, 534 So.2d 1176 (Fla. 5th DCA 1988).
Additionally, the appellant urges that she is entitled to a new trial because the jury verdict demonstrated an inherent inconsistency. This argument is based upon the fact that the damages found by the jury in the aggregate amount of $2,350.00 were necessarily predicated on an implied finding by the jury, consistent with the trial court's instructions, that the plaintiff had sustained a permanent injury per the threshold requirement of section 627.737(2), Florida Statutes (1987). On the other hand, when asked how many years it intended to provide Burton with compensation for future medical expenses and compensation, the jury answered one year.
The attorneys below both agreed to the submission of these interrogatories concerning the period of time to be covered in regard to compensation for future losses because of the provisions of the Tort Reform Act of 1986, section 768.77. See In Re Standard Jury Instructions, 541 So.2d 90 (Fla. 1989). That section provides:
(1) In any action to which this part applies in which the trier of fact determines that liability exists on the part of the defendant, the trier of fact shall, as part of the verdict, itemize the amounts to be awarded to the claimant into the following categories of damages:
(a) Amounts intended to compensate the claimant for economic losses;
(b) Amounts intended to compensate the claimant for noneconomic losses; and
(c) Amounts awarded to the claimant for punitive damages, if applicable.
(2) Each category of damages, other than punitive damages, shall be further itemized into amounts intended to compensate for losses which have been incurred prior to the verdict and into amounts intended to compensate for losses to be incurred in the future. Future damages itemized under paragraph (1)(a) shall be computed before and after reduction to present value. Damages itemized under paragraph (1)(b) or (c) shall not be reduced to present value. In itemizing amounts intended to compensate for future losses, the trier of fact shall set forth the period of years over which such amounts are intended to provide compensation.
The Florida Supreme Court Committee on Standard Jury Instructions (Civil) has attempted to interpret section 768.77 and formulate a verdict form to effectuate it. The Florida Supreme Court considered this itemized verdict form in its 1989 opinion, cited above, and characterized the Committee's recommendations "as a good faith effort to accommodate the legislature and the courts ..." It also commented, however, that its publication of the verdict form "does not imply any view of the constitutionality of section 768.77 under Art. II, sec. 3, Fla. Const." See In Re Standard Jury Instructions at 91.
We note the Florida Supreme Court's intimation that section 768.77 represents an unconstitutional invasion by the Florida Legislature of the province of the judiciary, and that said section may be constitutionally invalid on its face and as applied. We need not reach that determination in this case, however, and elect not to do so since *333 it has not been raised by the parties, nor briefed.[2]
Based upon the record in the instant case, it is readily apparent that the jury felt that the plaintiff did not suffer a permanent injury; indeed, this is conceded in the appellant's brief on appeal. Nevertheless, the jury decided to award her something even so. Both attorneys agreed to the verdict form utilized below, which occasioned the confusion, and the appellant should not be awarded a new trial simply because she received more than she would have had the jury properly understood and applied the trial court's instructions in regard to the issue of permanency. We note that the appellee has filed no cross-appeal in this regard.
Accordingly, we affirm the trial court's denial of a directed verdict in regard to the permanency of the injury and we reverse the trial court's judgment in regard to the allocation of fault, and remand for entry of judgment for the plaintiff in the full amount of the jury's verdict, which was $2,350.00.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
COWART and GOSHORN, JJ., concur.
NOTES
[1] Under comparative fault principles, a directed verdict may still lie as against a defendant whose negligent acts are less than the sole proximate cause of an injury. This is merely a finding that the defendant was negligent to some extent. Additionally, this would be the case even where there is reasonable evidence from which a jury might find a plaintiff to be contributorily negligent. Stresscon International, Inc. v. Helms, 390 So.2d 139, 142 (Fla. 3d DCA 1980); Santiesteban v. McGrath, 320 So.2d 476 (Fla. 3d DCA 1975) (issue of comparative fault, or negligence of the plaintiff, was properly permitted to go to the jury even though the question of the negligence of the defendant had been taken from the jury by way of a directed verdict on the issue of liability). A plaintiff is also at liberty to move for a directed verdict on the issue of comparative negligence in addition to the issue of the defendant's liability. Valdes v. Faby Enterprises, Inc., 483 So.2d 65 (Fla. 3d DCA), review dismissed, 491 So.2d 278 (Fla. 1986).
[2] We observe, however, that a trial jury duly constituted is an adjunct of the "judicial department" within the terms of this constitutional prohibition of the exercise by the legislative department of powers appertaining to the judicial department. Nelson v. McMillan, 151 Fla. 847, 10 So.2d 565 (1942). The pernicious nature of legislative aggrandizement was first, and most formidably, articulated by Chief Justice John Marshall in 1803:

The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written. To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed, are of equal obligation. It is a proposition too plain to be contested, that the constitution controls any legislative act repugnant to it; or, that the legislature may alter the constitution by an ordinary act.
Between these alternatives there is no middle ground. The constitution is within a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it.
Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803).