614 So.2d 495 (1993)
Donna EASKOLD, Petitioner,
v.
James RHODES, Jr., et ux., Respondents.
No. 79138.
Supreme Court of Florida.
March 4, 1993.
Robert P. Gaines of Beggs & Lane, Pensacola, for petitioner.
Thomas E. Wheeler, Jr. of Bell, Schuster & Wheeler, P.A., Pensacola, for respondent.
Ada A. Hammond of Taylor, Day & Rio, Jacksonville, amicus curiae for State Farm Mut. Auto. Ins. Co.
Jack W. Shaw, Jr. of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, P.A., Jacksonville, amicus curiae for Florida Defense Lawyers Ass'n.
HARDING, Justice.
We have for review Rhodes v. Easkold, 588 So.2d 267 (Fla. 1st DCA 1991), based upon conflict with Shaw v. Puleo, 159 So.2d 641 (Fla. 1964), and Burton v. Powell, 547 So.2d 330 (Fla. 5th DCA 1989), on the issue of the jury's ability to accept or reject the testimony of a medical expert. We have jurisdiction based upon article V, section 3(b)(4) of the Florida Constitution, and quash the decision below.
This case arose from an auto accident involving James and Elouise Rhodes and Donna Easkold in July 1988. The Rhodes filed a negligence action against Easkold, seeking damages connected with Elouise *496 Rhodes' injuries. Easkold denied liability, and a jury trial was conducted in 1990.
The depositions of Doctors Flynn, VerVoort, and Jankauskas were presented at the trial. The medical testimony and opinions of those physicians are the issue of this review. The evidence presented in those depositions is reported in the district court opinion:
Dr. Flynn, an orthopedic surgeon, first saw Rhodes in August 1988, at which time she was complaining of pain in her neck, back, and left knee, stemming from the auto accident. A CT scan and arthrogram revealed a herniated disc, nerve impairment in the neck and lower back, arthritic changes in the kneecap, and both torn cartilage and a small chip inside the left knee joint. In February 1989, Flynn performed surgery on the kneecap and, during surgery, discovered a fracture. It was Flynn's opinion that the fracture was caused by trauma, "and from the history she [Rhodes] gave me, the only trauma that she knew of or at least she related to me was the auto accident." It was also Flynn's opinion that Rhodes had sustained permanent injuries to her left knee, back, and neck, in the auto accident. He admitted on cross-examination that he had no way of knowing what percentage of Rhodes' impairment had existed before the 1988 auto accident except "what she told me."
Dr. VerVoort performed an IME on Rhodes in November 1989. It was his opinion, after examining her medical records and taking a history from Rhodes, that she had sustained a permanent injury to her neck, low back, and left knee as a result of the July 1988 auto accident. In giving her history to Dr. VerVoort, Rhodes had denied any history of neck or back pain prior to the July 1988 accident. Dr. VerVoort admitted that he was relying upon Rhodes' statements to him to determine that there was some aggravation of her knee from the accident.
In addition, the record contained the deposition of Dr. Jankauskas, who had been Rhodes' regular physician since 1981. Jankauskas' review of medical charts revealed that Rhodes had been examined both at his office and at the county clinic, on several occasions between 1975 and 1986, for various conditions, including numbness in her left leg and toes, pain in her back, numbness and pain on the left side of her head and neck, left leg pain, and pain in the ears and back. Neither Dr. Flynn nor Dr. VerVoort had had access to these medical records at the time of their depositions.
588 So.2d at 267-268 (alteration in original).
During cross-examination of Elouise Rhodes at trial, it was also elicited that she had given contradictory statements concerning her previous medical history in two depositions taken in April and June of 1990. In the first deposition, Rhodes stated that she had never had any kind of trouble with her back or knees before the 1988 accident, had no other injuries that required treatment from a doctor before the accident, and had not complained to Dr. Jankauskas about pain in her neck, back, or knees before the accident. However, in the second deposition, Rhodes admitted that she had left her job in the maintenance department at Sacred Heart Hospital after she was hit in the leg with a buffer, which caused her to fall down. She also admitted that she had "probably had a little backache or headache" at times before the 1988 accident. Id. at 268.
The jury found Easkold negligent, and awarded Rhodes $37,000 for past and future medical expenses and loss of earning ability. However, the jury awarded no damages for pain and suffering or loss of consortium, and specifically found that Rhodes had not sustained a permanent injury. Rhodes filed a motion for new trial, arguing that the uncontradicted medical evidence indicated that she had sustained permanent injuries as a result of the auto accident. That motion was denied by the trial court. Id.
On appeal, the First District Court of Appeal reversed the denial of the motion for a new trial. The district court found that Rhodes had presented expert medical testimony that she had sustained permanent *497 medical injuries as a result of the auto accident and that this medical evidence was uncontroverted because Easkold presented no medical testimony to the contrary and neither Dr. Flynn nor Dr. VerVoort testified that additional medical history would have changed his opinion. Consequently, the district court determined that the jury's verdict of no permanent injury was contrary to the manifest weight of the evidence and that Rhodes' motion for a new trial should have been granted. Id. at 269.
In reaching this conclusion, the district court relied upon its own holding in Morey v. Harper, 541 So.2d 1285 (Fla. 1st DCA), review denied, 551 So.2d 461 (Fla. 1989). As in the instant case, Morey involved a personal injury action for damages sustained in an automobile accident. Two physicians testified that Morey sustained permanent injury from the auto accident. However, it was also demonstrated that the medical history on which the doctors based their opinion of permanency was in part inaccurate. The jury found that Morey did not sustain a permanent injury under section 627.737(2), Florida Statutes (1985),[1] and the court entered judgment in favor of Harper. On appeal, the First District Court of Appeal reversed the judgment and remanded for a new trial. The district court reasoned that, because neither doctor had opined that the additional medical history of prior injuries and symptoms would cause him to change his opinion of the permanent nature of the injuries and because one doctor was not asked whether this history of prior injury would affect his opinion, the medical testimony of permanency was "essentially uncontradicted." 541 So.2d at 1288. Consequently, the district court concluded that the jury's verdict of no permanent injury was contrary to the manifest weight of the evidence because "the medical evidence, although based on an inaccurate predicate, was uncontroverted on the record." Id.
In the instant case, the First District Court of Appeal found that the medical evidence of permanency was similarly uncontroverted because Easkold "failed to specifically ask Drs. VerVoort and Flynn at their depositions whether their opinions would have been different had they known Mrs. Rhodes' complete medical history." 588 So.2d at 269. Under the district court's reasoning, a doctor's medical opinion cannot be disregarded even if the medical history given to the doctor by the plaintiff is false or incomplete, "`unless appropriate questions are put to the doctor specifically inquiring about the effect of the false or omitted information on the doctor's previously expressed opinion.'" Id. (quoting Faucher v. R.C.F. Developers, 569 So.2d 794, 801 (Fla. 1st DCA 1990)). This decision is contrary to the Florida Standard Jury Instruction (Civil) 2.2(b), relating to the believability of expert witnesses. Instruction 2.2(b) provides that the jury "may accept [expert witness] opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case." Fla.Std. Jury Instr. (Civ.) 2.2(b) (emphasis added). As noted in the comment to the instruction, this instruction is based upon Shaw v. Puleo, wherein this Court recognized that the jury is free to "accept or reject the testimony of a medical expert just as it may accept or reject that of any other expert." 159 So.2d at 644.
In the instant case, both VerVoort and Flynn premised their medical opinions upon Rhodes' self-report of no previous trauma and no history of neck or back pain prior to the 1988 accident. However, the jury also heard Dr. Jankaukas' deposition and *498 Rhodes' contradictory depositions from which the jury could have concluded that Rhodes did not accurately report her medical history to VerVoort and Flynn. As we explained in Shaw, "even though the facts testified to by [the medical expert] were not within the ordinary experience of the members of the jury, the jury was still free to determine their credibility and to decide the weight to be ascribed to them in the face of conflicting lay evidence." 159 So.2d at 644. Based upon the rule announced in Shaw and incorporated into instruction 2.2(b), the jury in the instant case was "justified in determining that the opinion testimony was flawed by reason of the materially untruthful history given [to the doctors] by the claimant." 588 So.2d at 269 (Wolf, J., dissenting).
Accordingly, the decision below is quashed and the cause is remanded with directions that the trial court's judgment be affirmed.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Under section 627.737(2), Florida Statutes (1985), a plaintiff is precluded from recovering damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of ownership, maintenance, operation, or use of a motor vehicle unless such injury or disease satisfies one of the listed threshold requirements. Morey and the instant case both involve the subsection (b) requirement that the injury or disease must be a "[p]ermanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." § 627.737(2)(b), Fla. Stat. (1985). The 1990 version of the statute at issue in the instant case is the same as the 1985 statute in Morey.