630 So.2d 1184 (1994)
Ann S. RICE, Appellant,
v.
Nancy EVERETT and Gary Everett, her husband, Appellees.
No. 92-2317.
District Court of Appeal of Florida, Fifth District.
January 14, 1994.
Rehearing Denied February 10, 1994.
David G. Henry and J. Emory Wood, of Wood, Crist and Valenti, P.A., Tampa, for appellant.
Frank Hamilton, III, and Christopher M. Shulman, of Frank Hamilton & Associates, P.A., Tampa, for appellees.
HARRIS, Chief Judge.
The issue on appeal is whether the trial court erred in granting a new trial after the jury had returned a zero verdict in a case involving personal injuries allegedly sustained in an automobile collision.
Nancy and Gary Everett (Everett), were in their pickup truck and in line at a fast food outlet. Immediately behind them was Ann Rice (Rice) in her van. After Rice placed her order, her foot slipped off the brake and, before she could recover, her van hit the rear of the Everett vehicle. Rice estimated her speed at that time at no more than six miles *1185 per hour. The accident caused only minor property damage. The Everetts filed a complaint against Ann Rice seeking damages for permanent injuries to both of them as a result of Rice's negligence.
At trial, Dr. William Stalcup was asked on direct examination whether Mrs. Everett's injury was causally related to the Rice automobile accident. Dr. Stalcup responded, "That is the history that the patient gave me. So, I would assume, it was causally related". However, on cross-examination, when Dr. Stalcup was asked if he was aware that Mrs. Everett had had a prior automobile accident in 1986, he answered yes but stated that Mrs. Everett told him she had completely recovered from that accident. He admitted that he had never seen any records of treatment after the first accident and that he was basically relying on the history given to him by the patient. Defense counsel then informed Dr. Stalcup that Mrs. Everett had been to a chiropractor complaining of low back pain, pain between her shoulders, neck pain, and headaches, all less than two months prior to the accident that is the subject of this lawsuit. The doctor admitted that this was not consistent with the history Mrs. Everett had given him that she had totally recovered from the first accident.
Dr. Stalcup also admitted he was unaware that Mrs. Everett had been treated by another doctor in the early 1980s for neck pain related to her work. Defense counsel specifically listed the dates of at least 30 visits to the chiropractor with complaints of neck pain prior to the first accident in March of 1986. Counsel went on to state that after the first accident, Mrs. Everett continued to see the chiropractor for another twenty-three visits over the next three years, on each occasion complaining of neck pain. Dr. Stalcup admitted that he was unaware of these visits and that they indicated Mrs. Everett had "a chronic long-term neck complaint problem."
Based on the more complete history defense counsel provided during cross examination, Dr. Stalcup changed his opinion regarding the cause of Mrs. Everett's injury. He had originally stated in his opinion letter that the injuries were sustained in the motor vehicle accident that is the subject of this lawsuit. After learning Mrs. Everett's full medical history, the doctor, undaunted, opined that her preexisting condition was aggravated by the instant accident.
The defense presented the testimony of an independent medical examiner, Dr. Harry Jones. He testified that Mrs. Everett's history indicated she had a history of neck sprain and chronic anxiety, with the anxiety causing headaches. He further stated that her CT scan showed no disk herniation, no disk bulge, no spurs, and no evidence of any traumatic injury, as would result from a car accident. During Dr. Jones's examination, the jury learned that Mrs. Everett had had yet another accident, after which she wore a soft collar for three weeks.
Dr. Jones further testified that he saw nothing justifying an impairment rating, that Mrs. Everett was fully capable of employment, and that she did not need further medical care for the accident which is the subject of this lawsuit. He did state that she may wish to seek psychological or psychiatric treatment and perhaps biofeedback treatment for her chronic anxiety and her headaches. Finally, Dr. Jones stated that Mrs. Everett's problems were not related to this accident.
The defense also published to the jury the following testimony from the transcript of Mrs. Everett's deposition:
Q. This accident happened in December of 1988, do you remember having any neck problems or headache problems during the year of 1988?
A. No.
As to Gary Everett's injuries, Dr. Batson, a chiropractor whose testimony was presented by the plaintiffs, testified that he had a ten percent residual permanent impairment from the accident.
The defense introduced a surveillance videotape of the Everetts which was taken by a private investigator. The Everetts were unaware that they were being videotaped. Apparently, the tape showed full range of motion by both plaintiffs and even showed Mr. Everett lifting heavy appliances into the bed of a truck.
*1186 The jury was free to, and did, reject the testimony of plaintiff's witnesses. It is the jury's function in any trial to evaluate the credibility of the witnesses. As the supreme court held in Easkold v. Rhodes, 614 So.2d 495 (Fla. 1993):
As we explained in Shaw [Shaw v. Puleo, 159 So.2d 641 (Fla. 1964)] "even though the facts testified to by [the medical expert] were not within the ordinary experience of the members of the jury, the jury was still free to determine their credibility and to decide the weight to be ascribed to them in the face of conflicting lay evidence."
The trial judge's assumption that medical evidence can only be overcome by countermedical evidence is thus wrong as a matter of law. The fact that Mrs. Everett's credibility was rendered questionable at best and the contents of videotape which showed the physical capability of the unsuspecting Mr. Everett were sufficient "lay" evidence to justify the jury's rejection of the plaintiffs' expert testimony. Thus, the zero verdict was appropriate and the trial judge abused his discretion in ordering a new trial.
REVERSED and REMANDED to reinstate the jury verdict.
GRIFFIN and THOMPSON, JJ., concur.