[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16004

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 30, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-00255-CV-1-SPM-AK

EVELYN ORTIZ, as Personal Representative of the
Estate of Rafael I. Ortiz-Pagan,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 30, 2009)

Before BLACK, WILSON and COX, Circuit Judges.

COX, Circuit Judge:

## I.  BACKGROUND

On Monday, March 17, 2003, Rafael Ortiz-Pagan presented to the emergency room at the Department of Veterans Affairs Hospital in Gainesville, Florida ("the hospital" or "the VA"). Ortiz was a chronic pain patient and had overdosed on his pain medication. The emergency room physician kept Ortiz in the emergency room overnight and ordered a psychiatry consult. The psychiatry resident physician who examined and interviewed Ortiz in the late morning on Tuesday, March 18, invoked The Florida Mental Health Act to involuntarily commit Ortiz to the psychiatric ward of the hospital and placed him on suicide precautions.

Ortiz spent much of the day on Tuesday, March 18, on suicide precautions, in the day room of the psychiatric ward, under constant one-on-one observation by a nurse. During that time, he was evaluated by a staff psychiatrist, Dr. Camilo Martin. In the early afternoon, Martin concluded that Ortiz did not require suicide precautions and downgraded his observational status to close observation. On close observation, patients are assigned a room and observed by a nurse at fifteen-minute intervals.

During the afternoon of March 18, both before and after he had been downgraded to close observation status, Ortiz visited with his wife and sons in the day room of the psychiatric ward. After he was changed to close observation status, the nursing staff checked on him every fifteen minutes. His family departed after 8:00 p.m. Ortiz went to his room and laid in bed. The room Ortiz occupied had

several patient beds separated by partitions. There were three other patients in the room. Ortiz was assigned the third bed on the left, a corner bed by a window.

At 11:45 p.m., Ortiz was observed in his bed. At 12:03 a.m. on Wednesday, March 19, 2003, a nurse found Ortiz hanging from a bed sheet attached to the window.[1] He had committed suicide.

Ortiz's widow ("Plaintiff") brought this lawsuit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 & 2671-80, alleging that the hospital staff had been negligent in failing to adequately care for and supervise Ortiz. (R.1-1.) At trial, Plaintiff presented expert testimony from Dr. Gary Jacobson. Jacobson had reviewed Ortiz's medical records and opined that hospital personnel breached the standard of care by negligently failing to conclude that Ortiz was a suicide risk. He further opined that, as a result of the failure to recognize Ortiz was at risk for suicide, the hospital staff failed to monitor Ortiz adequately and failed to place him in an environment that would prevent his suicide. The United States did not present an independent expert witness to rebut Jacobson's testimony. The treating physicians and nurses who interacted with Ortiz on the psychiatric ward testified about their

---

[1]There was no evidence as to how Ortiz attached the bed sheet to the window, or whether the window was open. The only evidence about the physical state of the window was: (1) a nurse's note that, when he found Ortiz hanging at 12:03 a.m. on March 19, 2003, "a white sheet . . . was wrapped around [Ortiz's] neck and attached to the top of the window." (R.5 at 33 INP); and (2) testimony by a nursing assistant on the psychiatric ward that the window by Ortiz's bed was big and square and required a key for opening. (R.3-82 at 60.)

examinations and interactions with him, their assessment of his medical condition, and the actions they took during his hospital stay.

The district court issued a memorandum of decision. The court rejected Jacobson's opinions that the hospital staff had breached the standard of care, offering as an general explanation: "Dr. Jacobson's testimony and his conclusions about Mr. Ortiz were based entirely upon entries in the medical records, some of which were taken out of context and which were later explained in more detail in testimony from treating psychiatrists and nurses." (R.1-73 ¶80.) The court gave specific examples of testimony by treating professionals from which the court concluded that Jacobson's opinions, based solely on the medical record, misinterpreted Ortiz's condition. (*Id.* ¶¶81-83.) The court stated, "Dr. Jacobson's conclusion that Mr. Ortiz was under an imminent risk of suicide at the VA hospital on March 18, 2003, and that the staff negligently failed to monitor him is not confirmed by the testimony at trial or by the medical records." (*Id.* ¶87.)

The court also found, "The reasons Dr. Martin gave for removing Mr. Ortiz from suicide precautions reflect a reasonable medical assessment of Mr. Ortiz's condition and his treatment needs," (*id.* ¶86), and "Dr. Martin's decision to take Mr. Ortiz off of suicide precautions reflects a reasonable medical judgment." (*Id.* ¶91.) The order concludes, "Under the evidence presented at trial I cannot find that the VA

4

medical staff was negligent in their care and treatment of Mr. Ortiz nor can I find that any act of the VA staff was the proximate cause of his death." (*Id.* ¶90.)

The court entered judgment for the United States. Plaintiff appeals.

## II. ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

Plaintiff argues that the district court clearly erred by not adopting Jacobson's opinion that Ortiz was suicidal and by finding that the hospital staff was not negligent and did not cause Ortiz's death. Plaintiff argues that Jacobson's testimony was the only expert testimony on the standard of care and the breach thereof and therefore should have been accepted by the district court.

The United States responds that the district court did not commit error by rejecting Plaintiff's expert witness's opinions and concluding that the hospital staff had not been negligent. The United States argues that a trier of fact may reject an expert's opinions based upon any evidence in the record, whether or not that evidence is offered by another expert witness.

## III. STANDARDS OF REVIEW

We review the district court's findings of fact for clear error. *Whitley v. United States*, 170 F.3d 1061, 1068 n.14 (11th Cir. 1999) (*citing Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir.1998). "We cannot find clear error unless 'we are left with a definite and firm conviction that a mistake has been

5

committed.'" *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (*quoting Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003)).

We review a district court's application of law to the facts de novo. *Whitley*, 170 F.3d at 1068 (*citing Reich v. Davis*, 50 F.3d 962, 964 (11th Cir. 1995)).

## IV. DISCUSSION

In actions brought under the Federal Tort Claims Act, liability is determined under the law of the state in which the alleged negligence occurred. 28 U.S.C. § 1346(b)(1); *F.D.I.C. v. Meyer*, 510 U.S. 471, 478, 114 S. Ct. 996, 1001 (1994). Under Florida law, a hospital may be liable for the death of a inpatient who commits suicide. *Paddock v. Chacko*, 522 So.2d 410, 417 (Fla. 5th DCA 1988) ("Where a patient has surrendered himself to the custody, care and treatment of a psychiatric hospital and its staff, liability may be predicated upon the hospital's failure to take protective measures to prevent the patient from injuring himself.") As in all medical malpractice cases,

> [T]he claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

Fla. Stat. Ann. § 766.102(1).

6

In this case, Jacobson gave an expert opinion that the hospital staff should have recognized Ortiz was at acute risk of suicide. (R.2-81 at 47-48.) Jacobson's opinion that the hospital breached the standard of care by failing to diagnose Ortiz as suicidal was based upon his review of medical records that the VA maintained on Ortiz, including outpatient clinic, emergency room, and inpatient hospital records. (*Id.*at 48.)

The United States did not present an expert witness to opine as to the standard of care. The United States called the doctors and nursing staff members who interacted with Ortiz to explain their medical notes and treatment of Ortiz during his March 2003 stay in the hospital. From that testimony, the district court concluded that Jacobson had misinterpreted notes in the medical record, the only information about Ortiz upon which Jacobson based his opinions. (*See* R.1-73 ¶¶ 80-83.) And, for that reason, the district court rejected Jacobson's expert opinion of misdiagnosis. (*Id.* ¶ 87 ("Dr. Jacobson's conclusion that Mr. Ortiz was under an imminent risk of suicide at the VA hospital on March 18, 2003, . . . is not confirmed by the testimony at trial or by the medical records."))

The court did not clearly err. It was within the court's province as fact finder to conclude that Jacobson's opinion that the hospital staff breached the standard of care in failing to recognize Ortiz as suicidal should not be credited. *Mims v. United*

7

*States*, 375 F.2d 135, 143 (5th Cir. 1967) ("[E]xpert opinion evidence may be rebutted by showing the incorrectness or inadequacy of the factual assumptions on which the opinion is based . . . ");[2] *Easkold v. Rhodes*, 614 So.2d 495, 497-98 (Fla. 1993) (jury may disregard a medical expert's opinion, even in the absence of expert testimony to the contrary, if it finds that the medical record upon which the expert opinion was based is incomplete); *see also* Fla. Std. Jury Instr. (Civ.) 2.2(b) ("You may accept [expert] opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the witness, <u>the reasons given by the witness for the opinion expressed</u>, and all the other evidence in the case.") (emphasis added).

The other opinions Jacobson offered regarding breaches of the standard of care concern the standard of care <u>for patients who are suicidal</u>. Jacobson testified that the standard of care for protecting a suicidal patient "is to observe that patient frequently enough that they are not able to make [suicide] attempts . . . in a hospital." (R.2-81 at 51.) Jacobson testified that monitoring a suicidal patient at fifteen-minute increments was inadequate. (*Id.*) He also testified that a hospital has a duty to provide a safe environment, including providing an environment in which "there's no

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

means or the means are as limited as possible to harm oneself." (R.2-81 at 54-55.) He testified that, paired with inadequate monitoring, placing a suicidal patient in a room with a window that opens so as to allow attachment of a means of hanging would be a breach of the standard of care. (R.2-81 at 55-56.)

Having rejected Jacobson's opinion that the hospital staff negligently failed to diagnose Ortiz as suicidal, the district court did not err in disregarding Jacobson's opinions that the hospital staff breached the standards of care for observation and placement of a suicidal patient. Those opinions became irrelevant once the district court determined that the hospital staff acted reasonably in concluding that Ortiz was not an acute risk for suicide. And, the district court properly disregarded Jacobson's opinions about physical aspects of the room in which Ortiz was placed for another reason. There was no evidentiary basis for Jacobson's opinion that, when paired with monitoring at fifteen-minute intervals, placing Ortiz in a room with a window that opened was a breach of the standard of care. As stated above, there was no evidence that the window was open, only that the bed sheet with which Ortiz hung himself was attached to the top of the window.

## V. CONCLUSION

The court permissibly rejected Jacobson's opinion testimony, the only evidence Plaintiff presented that the actions of the VA hospital staff breached the prevailing

9

professional standards of care. For that reason, Plaintiff did not prove her negligence

case. And, the court did not err in granting judgment to the United States.

AFFIRMED.