QUINCE, J.
Howard B. Wald, Jr., seeks review of the decision of the First District Court of Appeal in Grainger v. Wald, 982 So.2d 42 (Fla. 1st DCA 2008), on the ground that it expressly and directly conflicts with decisions of other district courts of appeal and this Court on two questions of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we quash the decision of the First District.
FACTUAL AND PROCEDURAL HISTORY
Howard Wald, Jr., was involved in a car accident with Sam Gus Felos, who admitted his fault for the accident.[1] Wald alleged injuries to his neck, back, right arm, foot, and thigh from the collision. Wald sought damages for his neck and back injuries, but not the thigh injury because it caused no “ongoing chronic pain.”
*1204 Because the defendant admitted fault, the only issues the jury had to consider were causation, the permanency of Wald’s injuries, and damages. Two doctors testified at trial. Wald’s treating physician, Dr. Jackson Tan, stated that Wald’s injuries, including his neck, back, right elbow, and right thigh injuries, were permanent and connected with the accident. The defendant’s expert physician, Dr. Howard Hogshead, testified that Wald had permanent right thigh numbness and, giving Wald “the benefit of the doubt,” that condition was related to the collision. Dr. Hogshead also stated his opinion that Wald did not sustain permanent neck or back injury as a result of the accident.
Wald moved for directed verdict on the issue of permanency. Over the defendant’s objection, the trial court granted the motion for directed verdict on permanency, but only as to the right thigh condition. The trial court instructed the defendant that he was free to argue to the jury that none of Wald’s other injuries were permanent. The trial court instructed the jury that it was free to weigh, accept, or reject the opinions of any expert witness. However, there was no reference to permanency in the verdict form or in the jury instructions. The jury entered judgment for Wald and awarded him over $1 million in damages for his injuries.
On appeal, the First District Court reversed the final judgment, finding that the trial court committed reversible error by directing a verdict as to permanency as that was a jury question. The First District explained that a jury is free to weigh the credibility of expert witnesses as it does any other witness and to reject any testimony regarding permanency, including uncontradicted testimony. The First District concluded that there was conflicting testimony as to the permanency of Wald’s neck and back injuries and ambivalent testimony as to the permanency of the thigh injury, for which Wald did not even seek damages. Grainger v. Wald, 982 So.2d 42 (Fla. 1st DCA 2008).
Wald sought review of the First District’s decision in Grainger based on alleged express and direct conflict with decisions of other district courts and this Court on two points of law, whether permanency is a jury question and whether the jury can reject uncontradicted expert testimony. This Court granted review and heard oral argument from the parties.
ANALYSIS
In the instant case, the First District concluded that the trial court erred as matter of law by directing a verdict on issue of permanency, as “permanency is a jury question.” Grainger, 982 So.2d at 43. The First District also concluded that “the jury was free to reject any testimony regarding permanency, including uncontra-dicted testimony.” Id. However, we conclude that these statements by the First District are overly broad and do not accurately reflect Florida law on these issues.
Determinations about the permanency of an injury are generally made by juries. See State Farm Mut. Auto. Ins. Co. v. Orr, 660 So.2d 1061 (Fla. 4th DCA 1995). Nonetheless, where the evidence of injury and causation is such that no reasonable inference could support a jury verdict for the defendant, it is not improper to direct a verdict on the permanency issue for the plaintiff. Id. at 1063. A plaintiff can establish a prima facie case of permanency by presenting expert testimony of permanency. Once this is done, the burden shifts to the defendant to present countervailing expert testimony, severely impeach the plaintiffs expert, or present other evidence which creates a direct conflict with the plaintiffs evidence. See Evans v. Montenegro, 728 So.2d 270, 271 *1205 (Fla. 3d DCA 1999) (holding that a directed verdict for the plaintiff on permanency was proper where the defendant did not impeach the plaintiffs expert and did not present conflicting evidence on permanency). If the defendant succeeds in this endeavor, a jury question is presented; if not, a directed verdict on permanency is appropriate. Id.
A party moving for a directed verdict admits the truth of all facts in evidence and every reasonable conclusion or inference which can be drawn from such evidence favorable to the non-moving party. See Williamson v. Superior Ins. Co., 746 So.2d 483, 485 (Fla. 2d DCA 1999). A directed verdict is proper when the evidence and all inferences from the evidence, considered in the light most favorable to the non-moving party, support the mov-ant’s case as a matter of law and there is no evidence to rebut it. Orr, 660 So.2d at 1062.
In determining the propriety of a trial court’s directed verdict on permanency, the reviewing court must “first determine whether the evidence supporting [the plaintiffs] claim of permanent injury within a reasonable degree of medical probability met that standard. If so, [the court] then need[s] to examine the record to determine if there is any conflicting evidence or inferences on the issue of permanent injury from which the jury could draw a conclusion favorable to the party against whom the directed verdict was entered.” Id. (finding neither contradictory nor conflicting expert medical evidence and no other evidence that would furnish the jury a reasonable basis upon which to disbelieve the plaintiffs complaints of pain or to reject the opinion testimony of the medical experts).
A jury is free to weigh the opinion testimony of expert witnesses, and either accept, reject or give that testimony such weight as it deserves considering the witnesses’ qualifications, the reasons given by the witness for the opinion expressed, and all the other evidence in the case, including lay testimony. Easkold v. Rhodes, 614 So.2d 495, 497-98 (Fla.1993) (concluding that jury could reject expert medical testimony that the plaintiff had sustained permanent injuries from an automobile accident where the experts’ medical opinions were premised on the plaintiffs self-reported false medical history). See also Orr, 660 So.2d at 1062. However, when medical evidence on permanence is undisputed, unimpeached, or not otherwise subject to question based on the other evidence presented at trial, the jury is not free to simply ignore or arbitrarily reject that evidence and render a verdict in conflict with it. Campbell v. Griffith, 971 So.2d 232, 236 (Fla. 2d DCA 2008) (explaining that the jury’s award of no future medical expenses and no past or future noneconomic damages was improper where both the plaintiffs treating doctor and the defense medical expert testified that plaintiffs subclavian aneurysm was a permanent injury caused by the auto accident and that there was no other medical explanation for its cause); Williamson, 746 So.2d at 485-86 (holding that the jury was not free to reject the uncontroverted medical testimony indicating that the plaintiff had sustained a permanent injury as a result of a car accident where the defendant’s two medical experts both agreed that an aggravation of nonsympto-matic arthritis would be considered a permanent exacerbation).
The First District made a blanket statement that “the jury was free to reject any testimony regarding permanency, including uncontradicted testimony.” Grainger, 982 So.2d at 43. However, as the cases cited above illustrate, the jury’s *1206 ability to reject the testimony must be based on some reasonable basis in the evidence. This can include conflicting medical evidence, evidence that impeaches the expert’s testimony or calls it into question, such as the failure of the plaintiff to give the medical expert an accurate or complete medical history, conflicting lay testimony or evidence that disputes the injury claim, or the plaintiff’s conflicting testimony or self-contradictory statements regarding the injury. For example, when a medical expert’s opinion is predicated on an incomplete or inaccurate medical history, the jury is free to reject the expert medical testimony, even without conflicting medical testimony, if there is conflicting lay testimony. See Weygant v. Fort Myers Lincoln Mercury, Inc., 640 So.2d 1092, 1093-94 (Fla.1994) (holding that it was within jury’s province to reject uncon-troverted medical testimony where the plaintiff gave conflicting testimony in a workers’ compensation hearing stating that her car accident injuries were not incapacitating and that the only pain she suffered was attributable to her work-related fall and gave confusing medical histories to her medical experts that raised the possibility that their medical opinions were based on inaccurate predicates); Easkold, 614 So.2d at 497-98 (explaining that the jury was justified in determining that the opinion testimony of the medical experts was flawed based on the untruthful medical history given to the experts by the plaintiff and her contradictory deposition statements concerning her previous medical history); Chomont v. Ward, 103 So.2d 635, 637-38 (Fla.1958) (concluding that the jury had a reasonable basis for doubting the testimony of the plaintiff about his alleged physical injuries where there were many conflicts between the plaintiffs trial testimony and pre-trial deposition and two police officers testified that the plaintiff made no complaint about physical injuries immediately after the accident).
Here, the trial court granted the motion for a directed verdict on permanency of the right thigh injury. The First District stated that the testimony as to the permanency of the thigh injury was ambivalent. Grainger, 982 So.2d at 43. To the contrary, the record actually shows that the medical experts agreed on the permanency of the thigh injury. While the medical experts disagreed as to the medical cause of the thigh injury,[2] both agreed that Wald had sustained a permanent injury to his right thigh that was causally related to the accident.
Additionally, Grainger never argued that the directed verdict on permanency should not be granted based on “ambivalent” or “conflicting” evidence as to the permanency of the thigh injury. In fact, Grainger’s counsel acknowledged that the defense medical expert had related the thigh injury to the accident and had assigned it a permanent impairment rating. Grainger only argued that a directed verdict was not proper because the jury was free to “accept or reject any testimony and any respective evidence,” which was not the standard for determining whether the directed verdict was appropriate. Thus, we conclude that the trial court properly granted Wald’s motion for directed verdict on the issue of permanency.
The First District also stated that by granting a directed verdict as to the permanency of the thigh injury, “the trial court took from the jury’s consideration the issue of the permanency of [Wald’s] *1207 neck and back injuries, the only conditions for which [he] sought damages.” Grainger, 982 So.2d at 43. The First District concluded that section 627.737(2), Florida Statutes (2007), precluded the jury from awarding Wald damages based on the permanency of the thigh injury because it did not cause “pain, suffering, mental anguish, or inconvenience” where defense counsel had stated that the thigh injury caused no “ongoing daily chronic pain.” Id. at 43 & n. 1. We find the First District’s reading of the statute does not comport with its plain language.
Section 627.737(2)(b) provides that a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience (noneconomic damages) because of a bodily injury arising out of the use of a motor vehicle only in the event that the injury “consists in whole or in part of ... [permanent injury within a reasonable degree of medical probability.” (Emphasis added.) Thus, as long as part of the bodily injury arising out of the motor vehicle accident involves a permanent injury “within a reasonable degree of medical probability,” the plaintiff can recover noneconomic damages related to his pain, suffering, mental anguish, and inconvenience for all of the injuries related to the accident. Additionally, pain is only one of the noneconomic damages provided in the statute. Suffering, mental anguish and inconvenience are also compensable noneconomic damages. According to the record, Wald’s thigh injury caused sensitivity and discomfort, especially if he permitted children to sit on his lap. Thus, contrary to the First District’s conclusion, the statute did not preclude an award of noneconomic damages to Wald for the thigh injury.
Finally, the First District concluded that “there was no avenue through which the jury could reject the permanency of any of the injuries” because “there was no reference to permanence in the verdict form or in the jury instructions.” Grainger, 982 So.2d at 43. In his argument to this Court, Grainger asserts the same. However, the record shows that Grainger never raised any objection to the jury instructions or the verdict form on the basis that the permanency of the neck and back injuries was still at issue.
During a preliminary discussion of the jury instructions, Wald’s counsel stated that the instructions relating to personal injury damages would need to be changed if Grainger’s expert witness testified as expected by giving “permanency to the thigh” and the court granted Wald’s motion for directed verdict on permanency. Grainger’s counsel agreed. There was also a similar discussion relating to the verdict form. After the trial court granted the directed verdict, Wald’s counsel asked the court to remove the instruction relating to permanency[3] and to remove this from the verdict form as well. Grainger’s counsel voiced no objection on this ground when asked by the trial court if the instructions and verdict form were acceptable. Thus, Grainger did not preserve any issue relating to the adequacy of the jury instruction or the verdict form. See Fla. R. Civ. P. 1.470(b) (“At [the charge] conference all objections shall be made and ruled upon and the court shall inform *1208 counsel of such instructions as it will give. No party may assign as error the giving of any instruction unless that party objects thereto at such time, or the failure to give any instruction unless that party requested the same.”); City of Orlando v. Birmingham, 539 So.2d 1133, 1135 (Fla.1989) (holding that appellate court improperly addressed issue regarding jury instruction where party failed to object to the instruction and thus did not preserve issue for appellate review).
CONCLUSION
For the reasons stated above, we find that the trial court properly directed a verdict for Wald on the issue of permanency and thus the First District improperly reversed the final judgment in favor of Wald entered. Accordingly, we quash the decision of the First District and remand for reinstatement of the jury verdict.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.

. After trial, defendant Felos died and the personal representative of his estate, Athena F. Grainger, was substituted as the defendant in Wald’s suit.

. Wald's expert attributed the thigh injury to lumbar radiculopathy, while Grainger's expert attributed it to meralgia paresthetica.

. The court did instruct the jury that it was free to "accept [the expert witnesses’] testimony, reject it or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed and all other evidence in the case,” which comports with the standard jury instruction relating to the believability of expert witnesses. See Fla. Std. Jury Instr. (Civ.) 2.2(b).