MAKAR, J.
(Specially concurring).
I concur in the affirmance, but write to discuss two of the means by which the defendant, State Farm, challenged the evidence regarding the permanency of injuries sustained by the plaintiff, Paula Foster. By utilizing these two means, State Farm created an issue for the jury under Wald v. Grainger, 64 So.3d 1201 (Fla. 2011). As Wald made clear, the “[d]eter-minations about the permanency of an injury are generally made by juries.” Id. at 1204 (emphasis in original). Despite this general pronouncement, the Florida Supreme Court in Wald upheld a trial court’s directed verdict on the permanency of the plaintiffs thigh injury because both the plaintiffs and defendant’s experts agreed the injury was permanent in nature. Id. at 1206 (“the record actually shows that the medical experts agreed on the permanency of the thigh injury.”). In this case, plaintiff Foster claims the trial court should likewise have directed a verdict in her favor on the permanency of her injuries.
But this case does not present the harmonious agreement of experts on the permanency issue as in Wald; nor does it present wholly conflicting or contradictory evidence either. Instead, it lies somewhere in between. The plaintiff presented testimony and evidence from a number of experts on the permanency of her injury thereby handily meeting the requirement in Wald that the permanency claim be established within a reasonable degree of medical probability. Id. at 1205. In response, the defense presented the testimony and evidence of one expert, Dr. Hof- *1220 mann, to create a jury issue on permanence.
Primary in this appeal is the question of whether the defendant, through Dr. Hof-mann, established some “reasonable basis in the evidence” to create a jury question on permanence. In this undertaking, the type of evidence permitted under Wald, though not unbounded, is relatively broad. As Wald noted:
This can include conflicting medical evidence, evidence that impeaches[1] the expert’s testimony or calls it into question, such as the failure of the plaintiff to give the medical expert an accurate or complete medical history, conflicting lay testimony or evidence that disputes the injury claim, or the plaintiffs conflicting testimony or self-contradictory statements regarding the injury. For example, when a medical expert’s opinion is predicated on an incomplete or inaccurate medical history, the jury is free to reject the expert medical testimony, even without conflicting medical testimony, if there is conflicting lay testimony.
Id. at 1206. In providing these parameters, the Court did not cast in stone the only permissible ways by which a defendant can create a jury issue on permanence; it simply laid out the most common ones that form a reasonable basis for doing so.
In the instant case, State Farm used two categories of evidence to create uncertainty about the permanence of Foster’s injury. First, its expert, Dr. Hofmann, called into question the permanency of Foster’s injuries when he testified that “no new objective findings after the 2006 accident” existed when “compared to what was there before.” Though he would not unequivocally state that Foster did not have a permanent injury from the 2006 accident, Dr. Hofmann testified he was “confident in saying” that “the majority of her symptoms” and surgery “was a result of the other conditions, previous conditions.” A “majority” of symptoms, of course, does not cover all symptoms, leaving open the possibility that some symptoms related to the 2006 incident. Yet his broader testimony that “no new objective findings” supported a finding of permanence is enough to create a jury question. While the trial court was hesitant to find this testimony sufficient — finding it “very slim” — it cannot be concluded that a directed verdict was required under Wald.
Second, Dr. Hofmann performed what is called “Waddell’s testing” on Foster, the purpose of which is to test the credibility and consistency of a patient’s complaints of physical pain. He described the testing as a means “to verify a patient’s complaints as being legitimate or not or truthful or not.” Though not much was made of it in the parties’ briefs, this type of testing creates a potential tool for a defense expert to substantially undermine a plaintiffs claimed injuries and potentially create a jury issue on permanence. The test itself has been recognized or applied in many courts including federal courts in Florida. See, e.g., Partida v. Astrue, 2012 WL 695671(M.D.Fla. January 26, 2012) (discussion and application of Waddell test); Brinson v. Astrue, 2010 WL 419402 (N.D.Fla. January 28, 2010) (“Waddell test involves signs for nonorganic sources of lower back pain.”); see also Walgreen Co. v. Carver, 770 So.2d 172, 174 n. 3 (Fla. 1st DCA 2000) (referencing a Waddell functional capacity evaluation).
*1221 Yet its efficacy and importance can be subject to question, even if applied correctly. As an example, a Florida court recently remanded a social security determination in which an administrative law judge overvalued the results of a Waddell test:
While an ALJ may consider a positive Waddell’s test in assessing the credibility of subjective reports about a claimant’s symptoms, in this case, the ALJ took out of context and in isolation the importance of the meaning of Plaintiffs “positive Waddell test” as “evidence of symptom magnification during the physical examination.”
Gibson v. Commissioner of Social Sec., 725 F.Supp.2d 1347, 1353 (MJD.Fla.2010) (footnotes omitted). Similarly, but with a slightly different outcome, is Rush v. Jostock, 710 N.W.2d 570, 575 (Minn.App.2006), which addressed whether the use of the “Waddell’s signs” is misleading and prejudicial or clinically insignificant. The Court of Appeals of Minnesota upheld the admission of physician testimony on the results of Waddell testing, noting that its weight is subject to the results of cross-examination of the physician. Id. at 1353.
Given that the Waddell test is apparently used with some degree of regularity in litigation (and may be on the increase), care must be exercised in according it appropriate, versus conclusive, weight. If this case turned solely upon the results of Waddell testing on Foster, an even closer question on permanency would have confronted the trial judge.

. The Court's opinion is internally inconsistent, stating in its background discussion that the testimony or evidence must "severely impeach” a plaintiff's expert”, id. at 1204 (citing Third District case), but later saying that evidence that simply "impeaches” the expert's testimony is reasonable for that purpose. Id. at 1206.