KHOUZAM, Judge.
Shauna Rae Smith appeals an order granting Fernando Llamas’s motion for new trial in this automobile accident case. Because the jury’s verdict was not against the manifest weight of the evidence, we *1187 reverse and remand for the trial court to reinstate the verdict. We affirm as to the remaining issues without comment.
This ease arises from an automobile accident that occurred on the evening of April 25, 2008. Llamas was travelling westbound and Smith eastbound on White Boulevard, a two-lane road in Collier County. Smith was attempting to make a left turn when their vehicles collided.
Llamas filed a complaint against Smith, claiming that Smith’s negligence caused him to sustain personal injuries to his neck and knee in the accident. Smith denied the allegations and raised comparative negligence as an affirmative defense. A jury trial was held. The jury found Smith solely hable for the damages to Llamas and awarded Llamas $37,000 for past medical expenses. However, the jury found that Llamas’s injuries were not permanent and awarded zero damages for future care. The jury also awarded zero damages for pain and suffering. The verdict did not apportion damages between Llamas’s neck and knee injuries.
Llamas filed a motion for a new trial on damages, arguing that the verdict was contrary to the manifest weight of the evidence. He claimed that the substantially undisputed evidence presented at trial established that he suffered permanent injuries to his knee and neck as a result of the accident. Based on this evidence, he contended, it was unreasonable for the jury to fail to find that his injuries were permanent and accordingly award damages for future medical expenses as well as for pain and suffering. Following a hearing, the trial court granted Llamas’s motion and ordered a new trial. Smith timely appealed.
We review the trial court’s order for an abuse of discretion. Bulkmatic Transp. Co. v. Taylor, 860 So.2d 436, 444 (Fla. 1st DCA 2003). “For a verdict to be against the manifest weight of the evidence, so as to warrant a new trial, the evidence must be clear, obvious, and indisputable; where there is conflicting evidence, the weight to be given that evidence is within the province of the jury.” Harlan Bakeries, Inc. v. Snow, 884 So.2d 336, 340 (Fla. 2d DCA 2004). Where conflicting evidence has been presented, a trial court may not act as a “seventh juror with veto power” by deciding that the verdict was against the manifest weight of the evidence and granting a new trial on that basis. McNair v. Davis, 518 So.2d 416, 418 (Fla. 2d DCA 1988). Here, conflicting evidence was presented on the question of whether Llamas sustained permanent injuries as a result of the accident. So this question was for the jury — not the judge— to resolve.
I. THE NECK INJURY
As to Llamas’s neck injury, the parties presented conflicting expert testimony. Dr. Gomez, a neurosurgeon who treated Llamas for his neck injury, testified that the injury caused by the accident was permanent. Dr. Gomez explained that Llamas underwent successful surgery for the injury, but it was not anticipated that the surgery would eliminate his neck pain entirely. Indeed, Llamas continued to experience pain and would experience pain for the rest of his life. Orthopedic surgeon Dr. Lins, on the other hand, testified that he examined Llamas and believed that he did not sustain a permanent neck injury as a result of the accident. Dr. Lins did not necessarily take issue with Dr. Gomez’s decision that surgery was an option for Llamas, but he did not believe that the injury was related to the accident. He opined that conservative treatment would have been appropriate to treat the neck injury caused by the accident.
II. THE KNEE INJURY
The parties also presented conflicting evidence on whether Llamas sus *1188 tained a knee injury as a result of the accident. Though only one expert testified that Llamas had sustained a knee injury as a result of the accident, evidence was presented to rebut his testimony. The “jury is free to weigh the opinion testimony of expert witnesses, and either accept, reject or give that testimony such weight as it deserves considering the witnesses’ qualifications, the reasons given by the witness for the opinion expressed, and all the other evidence in the case, including lay testimony.” Wald v. Grainger, 64 So.3d 1201, 1205 (Fla.2011). The type of evidence that would create a reasonable basis for a jury to reject an expert’s testimony includes
conflicting medical evidence, evidence that impeaches the expert’s testimony or calls it into question, such as the failure of the plaintiff to give the medical expert an accurate or complete medical history, conflicting lay testimony or evidence that disputes the injury claim, or the plaintiffs conflicting testimony or self-contradictory statements regarding the injury.
Id. at 1206.
In this case, Dr. Katzman — an orthopedic surgeon who had treated Llamas for his knee injury — opined that the injury was permanent and related to the automobile accident. But Dr. Katzman admitted that his opinion was partially based on Llamas’s stated history, and the record shows inconsistencies in Llamas’s story that would call the accuracy of that history into doubt. Dr. Katzman testified that Llamas told him that he had been thrown around inside his vehicle during the accident and that he had hit a window as well as a door. Llamas also did not report to Dr. Lins or Dr. Gillis that he lost consciousness during the accident. But Llamas told Dr. Gomez that he did lose consciousness. And Llamas testified at trial that he did not remember striking any part of his body on any part of the vehicle during the accident because he was unconscious at the time. When asked whether he told any of his doctors that he struck any part of his body on any part of the car, he stated that he did not remember.
Dr. Katzman also testified that Llamas claimed he had immediate pain in his knee after the accident, that he had constant pain in his knee during the eight months since the accident, and that he had trouble walking. Dr. Katzman indicated that the type of injury that Llamas sustained would have quickly caused swelling. Llamas testified that both his knees were in pain and bleeding immediately after the accident, but he admitted that he did not seek medical care until days later and that he went to a chiropractor. An eye witness testified that he did not observe any injuries at the scene of the accident. During Llamas’s trial testimony, one juror submitted the following question: “Why didn’t you go to the emergency room on Saturday, instead of the chiropractor?” Llamas responded, “I don’t know. I don’t know. Something that happens and it’s hard for you to analyze so quickly.”
Llamas also testified that he would have told all of his doctors if he was experiencing any pain, but his medical records showed that he did not consistently report knee pain to his doctors. For example, Dr. Lins testified that the records from when Llamas first sought medical attention four days after the accident indicated that Llamas did not report knee pain at that time. And Dr. Gomez testified that Llamas did not have problems with his gait or his ability to walk.
Llamas’s testimony was also inconsistent regarding how the knee injury affected his work. He testified that he worked three jobs: he ran a landscaping company; worked as a dishwasher/delivery person for a local restaurant; and set up staging, lighting, and audio equipment for bands. *1189 He indicated that he had trouble working for some time after the accident but admitted that he was currently able to work. He described his work for bands as “physically demanding” and indicated that as a landscaper he mowed lawns and cleared garbage. Llamas testified that he did not have as many landscaping clients since the accident. However, when confronted with his own prior statements that the number of clients had actually increased since the accident, he responded to this discrepancy by saying, “I don’t remember.”
Dr. Katzman indicated that everyday events — such as twisting, jumping, or falling — could have caused the injury to Llamas’s knee. Dr. Murtagh, a neuroradiologist, examined the MRI of Llamas’s knee, and testified that the injury could have been caused by either degenerative changes or a specific trauma. He did not state an opinion on whether the surgery was necessary or the injury permanent.
III. CONCLUSION
We conclude that the trial court abused its discretion by granting a new trial in this case. There was conflicting evidence on whether Llamas sustained a permanent neck injury in the accident. And the jury could have concluded that Llamas did not sustain any knee injury as a result of the accident in light of evidence that he provided an inaccurate medical history and did not seek treatment for a knee injury until eight months after the accident. Accordingly, we reverse and remand for the trial court to reinstate the verdict.
Reversed and remanded with instructions.
BLACK, J., and MAKAR, SCOTT, Associate Judge, Concur.