IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

21ST CENTURY CENTENNIAL
INSURANCE COMPANY,

     Appellant,

v.                                   Case No. 5D16-1575

ELIZABETH THYNGE AND
HOWARD THYNGE,

     Appellees.

_____/

Opinion filed December 22, 2017

Appeal from the Circuit Court
for Brevard County,
George W. Maxwell III, Judge.

Rosemary B. Wilder, of Marlow, Adler,
Abrams, Newman & Lewis, Coral Gables,
Katherine E. Giddings and Diane G.
DeWolf, of Akerman, LLP, Tallahassee,
Irene A. Bassel-Frik and Jason L.
Margolin, of Akerman, LLP, Tampa, for
Appellant.

Annabel C. Majewski, and Roy D. Wasson,
of Wasson & Associates, Chartered,
Miami; and Jason Herman and Karen
Wasson, of The Law Offices of Dan Newlin
& Partners, Orlando, for Appellees.


PER CURIAM.

21st Century Centennial Insurance Company ("21st Century") appeals the trial court's order granting a new trial and directing a verdict in favor of Elizabeth and Howard Thynge ("Appellees"). Because the trial court incorrectly entered judgment in accordance with the directed verdict and granted a new trial, we reverse and remand for reinstatement of the jury verdict.

This appeal arises from Appellees' claim for uninsured/under-insured motorist coverage against 21st Century after a 2013 motor vehicle accident. Before trial, the lower court struck 21st Century's only three experts related to causation and permanent injury.[1] The case nevertheless went to trial, with only Mrs. Thynge and her neurosurgeon, Jonathan Paine, M.D., testifying as to causation and permanency. At the close of 21st Century's case, Appellees moved for a directed verdict on the issues of causation and permanency, arguing that 21st Century failed to rebut Dr. Paine's testimony with any medical testimony of its own. The trial court reserved ruling on the motion, and the case went to the jury. The jury returned a verdict finding the accident caused loss, injury, or damage but did not find that Mrs. Thynge sustained a permanent injury. The jury awarded only $7000 for lost wages. After trial, Appellees moved for judgment in accordance with their motion for directed verdict and for a new trial. The trial court granted that motion, and this appeal followed.

"A trial court's ruling on a motion for judgment in accordance with a prior motion for directed verdict is . . . reviewed de novo." Philip Morris USA, Inc. v. Barbanell, 100 So. 3d 152, 157 (Fla. 4th DCA 2012). "A motion for directed verdict should be granted only

---

[1] The experts at issue are the compulsory medical examination physician, a biomechanical engineer, and a medical coding expert.

where there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the non-moving party." Volusia Cty. v. Joynt, 179 So. 3d 448, 450 (Fla. 5th DCA 2015) (quoting Benitez v. Joseph Trucking, Inc., 68 So. 3d 428, 430 (Fla. 5th DCA 2011)). Likewise, a directed verdict "is not appropriate in cases where there is conflicting evidence as to the causation or the likelihood of causation." Cohen v. Philip Morris USA, Inc., 203 So. 3d 942, 949 (Fla. 4th DCA 2016) (quoting Friedrich v. Fetterman & Assocs., P.A., 137 So. 3d 362, 365 (Fla. 2013)).

Here, the jury initially determined that Mrs. Thynge did not sustain a permanent injury because of the accident. Although "determinations about the permanency of an injury are *generally* made by juries," a court may direct a verdict on permanency for the plaintiff "where the evidence of injury and causation is such that no reasonable inference could support a jury verdict for the defendant." Wald v. Grainger, 64 So. 3d 1201, 1204 (Fla. 2011). Specifically, Wald "allows for a directed verdict on permanency based on expert testimony except when (1) it is rebutted by another expert, (2) the testimony is impeached, or (3) other conflicting evidence is presented." Brown v. Lunskis, 128 So. 3d 77, 80 (Fla. 2d DCA 2013) (citing Wald, 64 So. 3d at 1204).

Dr. Paine performed a two-level cervical fusion on Mrs. Thynge and, through a published deposition at trial, opined that the accident led to aggravation of Mrs. Thynge's preexisting neck problems caused by degenerative disc disease. He also rendered the far-from-conclusive opinion regarding permanency that it was "possible" Mrs. Thynge would require future surgery and that she "probably has an approximately 15 to 20 percent added risk of a degenerative change accelerated by the presence of the fusion." Because the trial court struck its experts, 21st Century could not present contradictory

expert testimony on causation and permanency. 21st Century argues, however, that the motion for directed verdict should not have been granted because Mrs. Thynge gave an incomplete medical history to Dr. Paine and provided conflicting testimony regarding the accident and her injuries.

In support, 21st Century points out that Dr. Paine testified that he saw Mrs. Thynge only three times and recommended surgery due to compression of the nervous system to her neck. However, he had no idea how long the compression was actually there or how long Mrs. Thynge had degenerative disc disease. He testified that Mrs. Thynge wanted her neck fixed, so he treated her with that objective in mind. After healing from surgery, he gave Mrs. Thynge no restrictions and assigned a fifteen percent disability rating. Dr. Paine further testified that he had no knowledge of whether Mrs. Thynge had ever complained of or received treatment for neck pain prior to the June 2013 accident or whether Mrs. Thynge had any prior accidents. He also was not provided, nor did he review, any prior medical records or diagnostic studies. Mrs. Thynge acknowledged, however, that she had a work-related injury in 1999, which required lower-back surgery. She also testified that she had a prior automobile accident in Delaware, in 2000 or 2001, and an emergency C-section in 2010, requiring an epidural into the prior lower-back surgery site, which caused her symptoms to reoccur.

21st Century also offered the testimony of Ara Deukmedjian, M.D., a neurosurgeon who saw Mrs. Thynge after the accident. Contrary to the testimony of Dr. Paine, Dr. Deukmedjian testified that Mrs. Thynge was not suffering from nerve compression in the neck. Although Mrs. Thynge had muscle spasms on both sides of her neck, Dr. Deukmedjian saw no indication of a pinched nerve. Dr. Deukmedjian also testified that

4

Mrs. Thynge had degenerative disc disease and facet syndrome, which he described as the most common cause of neck pain in the United States.

Mrs. Thynge also provided conflicting testimony about what happened at the scene of the accident. For example, Mrs. Thynge initially stated that she did not remember anything about the accident. She did not remember getting out of her car or receiving an EMT examination. She claimed she could remember only being in the emergency room with one of her co-workers after the accident and having a bad headache. She later stated, "No, I remember someone banging on the window and I remember asking my sister if someone hit us," and she also testified that she remembered being on the stretcher. Additionally, the EMT who tended to Mrs. Thynge at the accident scene contradicted Mrs. Thynge's testimony by stating that she "was up and walking around the scene itself" and "denied any neck or back pain."

Because Dr. Paine was not given complete information regarding Mrs. Thynge's prior medical history, his opinions regarding causation and permanency were called into question, and the jury could properly reject them. See Wald, 64 So. 3d at 1204. In addition, Mrs. Thynge's inconsistent testimony about what occurred at the accident scene provides sufficient conflicting evidence upon which a jury could have based its decision. See id. at 1206. Thus, the trial court erred by entering a directed verdict on causation and permanency, and we reverse and remand for reinstatement of the jury's verdict.

21st Century also challenges the trial court's granting of a new trial. Appellees claim they were entitled to a new trial because the trial court improperly limited their questioning during voir dire. Because Appellees failed to notify the trial court of any challenge to the purported limitation of their voir dire, they could not subsequently seek a

5

new trial on this ground. <u>See</u> <u>Wallace v. Holiday Isle Resort & Marina, Inc.</u>, 706 So. 2d 346, 347 (Fla. 3d DCA 1998) ("[W]ithout a renewal of an earlier objection, it is reasonable to conclude that events occurring subsequent to the objection may have caused the objecting party to become satisfied with the jury about to be sworn." (citing <u>Joiner v. State</u>, 618 So. 2d 174, 176 (Fla. 1993))). Accordingly, we reverse the order granting a new trial.[2]

REVERSED and REMANDED with Instructions.

COHEN, C.J., EVANDER, J., and EGAN, R., Associate Judge, concur.

---

[2] Because we reverse the order granting a new trial, we do not address 21st Century's challenges, in the alternative, to the striking of its experts and the denial of its motion to disqualify Appellees' counsel.