IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

KIPP COOPER AND CLASSIC PLUMBING OF BREVARD, LLC,

      Appellants,

v.

TAMMY GONZALEZ,

      Appellee.

Case No.  5D22-79
LT Case No. 05-2019-CA-044387

_____/

Opinion filed March 31, 2023

Appeal from the Circuit Court
for Brevard County,
Curt Jacobus, Judge.

Warren Kwavnick, of Cooney Trybus
Kwavnick Peets, Ft. Lauderdale, and
Philip B. Wiseberg, of Williams,
Leininger & Cosby, P.A., North Palm
Beach, for Appellants.

Brian J. Lee, of Morgan & Morgan,
Jacksonville, for Appellee.


EDWARDS, J.

This case involves a December 2018, two-vehicle wreck in which Appellee, Tammy Gonzalez, was injured. Appellant, Kipp Cooper, was driving a van owned by his employer, Appellant, Classic Plumbing of Brevard County, LLC. Appellants admitted fault for the rear-end collision, but challenged the nature, extent, permanency, and causation of Appellee's injuries. We reverse and remand for a new trial because, as Appellants argue, the trial court erred in granting Appellee's motion for directed verdict on the issue of whether she sustained a permanent injury as there was conflicting evidence, presenting a question for the jury. As to the other issues raised by Appellants, we affirm.

Background

Following the crash, Appellee sought treatment on two occasions from the emergency room at a local hospital and then followed up with various health care providers for headache, neck pain, back pain, and shoulder pain. Appellants pointed out that there was evidence proving that Appellee had pre-existing injuries, degenerative changes, pain, or findings of injury involving her neck, back, and shoulder. Evidence was also introduced showing that Appellant had been involved in other auto accidents, some of which caused injury and led to medical treatment.

2

Following the subject wreck, Appellee received chiropractic treatment and injections for her neck. By all accounts, her neck pain improved and by the time of trial she was no longer receiving treatments focused on her neck.

Appellee's neurosurgeon, Dr. McCollom, ordered an MRI that revealed a large, extruded herniated lumbar disc at the L5-S1 level. When injection therapy provided only temporary relief, Dr. McCollom performed a microdiscectomy at that level which helped for several months. Ultimately, Dr. McCollom performed a vertebral fusion at L5-S1 which was successful and lessened, but did not eliminate, Appellee's low back pain.

Following the accident, Appellee also received treatment, including arthroscopic surgery, for her shoulder. Appellee's surgeon and Appellants' medical expert agreed that the surgery was successful in reducing her pain significantly. She received no treatment for her shoulder in the two years leading up to trial.

### The First Trial

The case first went to trial in October 2021. The jury's verdict found that Appellee had not sustained a permanent injury and awarded her $36,250 for past medical expenses. For reasons which the parties agree are not relevant, the trial court immediately granted a mistrial following rendition of the first verdict. Nobody appealed.

3

## Exclusion of Dr. McBride's Evolving Opinion

Appellants retained Dr. Grady McBride to perform a record review and compulsory medical exam of Appellee. He prepared two non-committal reports prior to the first trial, basically stating that he could not say whether the subject accident caused the lumbar disc herniation at L5-S1. In the middle of the first trial, on the evening before he was to testify, Dr. McBride told Appellants' counsel that he had reached a new opinion, namely that the accident definitely did not cause the L5-S1 disc herniation, as he had "come across" a 2013 CT scan report in the records provided to him that documented that same condition at that same location. McBride also noted that a 2013 X-ray report noted low back pain, consistent with that herniation.

Commendably, Appellants' counsel disclosed the new opinion and admitted that it was untimely. Without belaboring the arguments, concerns, and possible remedies discussed during the first trial, Dr. McBride's new definitive opinion was excluded based on Appellee's objections that invoked *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981). Dr. McBride was still permitted to testify about his timely-disclosed findings. It was agreed that Appellants' counsel would carefully lead their expert through his testimony in order to avoid disclosure of the new opinion.

## Dr. McBride: Second Trial

4

After the mistrial was granted on October 15, 2021, the case was transferred to a different trial judge who issued an order on October 22, 2021, for this and several other cases that were being rolled over to the November 29, 2021 docket. That order was described as "freezing the cases," stating that all discovery, listing of witnesses, pre-trial motions, and cut-off dates were now "ceased" and relief could only come via court order.

About one week after entry of the "freeze" order, Appellants provided to Appellee a third report from Dr. McBride that repeated the opinion first shared on the evening of October 14, 2021, in the middle of the first trial. Appellants had not sought relief from the freeze order. Appellee moved to strike or limit Dr. McBride's testimony, which Appellants predictably opposed. The successor trial judge heard arguments about whether Dr. McBride could testify that the L5-S1 condition and treatment were definitely not related to this motor vehicle accident. Given the freeze order, the trial court found that the disclosure of McBride's new opinion that was admittedly untimely in the first trial remained untimely in the second trial; it was once again excluded. Appellants' motion for continuance to permit Appellee to depose Dr. McBride was denied. Ultimately, Appellants simply read Dr. McBride's testimony from the first trial to the jury in the second trial.

Appellants argue that the trial court abused its discretion in excluding Dr. McBride's untimely disclosed, definitive opinion.  We disagree.  *Binger* and its progeny provide that testimony, such as previously undisclosed expert testimony in the form of a new witness,[1] undisclosed opinion,[2] or substantially changed opinion,[3] may be excluded when it is first offered after a critical point in time, if allowing it would result in surprise and substantial prejudice.  Examples of critical points include pre-trial witness disclosure deadlines, discovery cutoffs, or, as here, after trial has commenced.

When considering whether to exclude or limit such untimely disclosed testimony, the trial court is to consider: (1) the opponent's ability to cure the prejudice, (2) whether the proponent's noncompliance with the pretrial order was in bad faith, (3) whether the trial would be disrupted, and (4) any other relevant factor. *Binger*, 401 So. 2d at 1314.  Although the trial court did not quote chapter and verse from *Binger* in its ruling that excluded Dr. McBride's untimely developed and disclosed opinion, the relevant factors were

---

[1] *Binger*, 401 So. 2d at 1313.

[2] *See Perryman v. Crawford*, 968 So. 2d 83, 85–86 (Fla. 4th DCA 2007).

[3] *See Allstate Prop. & Cas. Ins. Co. v. Lewis*, 14 So. 3d 1230, 1232 (Fla. 1st DCA 2009).

discussed and are the foundation of that decision. Accordingly, as to that issue, we affirm the trial court.

<u>Directed Verdict on Permanency of Injury</u>

In an automobile accident case, the plaintiff may only recover for non-economic damages (pain, suffering, mental anguish, and inconvenience) if she has received a permanent injury in the accident. § 627.737(2), Fla. Stat. (2021). That section defines permanent injury as:

> (a) Significant and permanent loss of an important bodily function.
> (b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
> (c) Significant and permanent scarring or disfigurement.
> (d) Death.

§ 627.737(2)(a)–(d), Fla. Stat.

Appellee's evidence that she sustained a permanent injury to her shoulder came from a medical report dated June 2019 prepared by her orthopedic surgeon, Dr. Kugler. He noted that she was three months post-surgery and doing "extremely well." In his report, Dr. Kugler gave Appellee a 6% impairment rating.

Appellants countered with testimony from their orthopedic expert, Dr. Halperin, who opined within a reasonable degree of medical certainty that Appellee had not sustained a permanent injury to her shoulder. He reviewed her medical records, spoke with her, and conducted a physical exam in April

7

2021, two years following her shoulder surgery. Appellee told Dr. Halperin that she was doing well post-surgery and had no pain. He found no limitation of motion when comparing her shoulders. She expressed no pain or tenderness as he poked, prodded, and moved her shoulder during his examination.

Because Dr. Kugler did not testify at the second trial, both sides relied on Dr. Halperin to discuss Kugler's surgery. Dr. Halperin said that it was arthroscopic in nature, focused on repairing the torn labrum, and included shaving a little bit of bone to reduce pressure on the rotator cuff. Dr. Halperin testified that Dr. Kugler's 6% impairment rating given nearly two years earlier was based on a limitation in the range of motion for Appellee's shoulder that had since improved significantly to the point of being non-existent.

Dr. Halperin gave her no impairment rating for her shoulder, testified that, given her "great result," there was no need for further treatment, and said there were no limitations on her activities.

On cross-examination, Dr. Halperin agreed with Appellee's counsel that removing that little bit of bone resulted in a "permanent anatomical change." When asked whether Appellee had suffered a "permanent injury," Dr. Halperin stated the following:

> [T]he way I would define permanent injury, she doesn't have a permanent injury. She is fully functional. If you want to define

8

permanent injury, something is different inside of her body than it was before, you could say she is. But the way I would define permanent injury is it limited her as a —— after she's done with everything she went through, is there a problem, is there a limited motion. If the answer is no to all that, I don't consider it a permanent injury. But if you're asking me has something changed on the inside, the answer is yes.

At the close of all the evidence, Appellee moved for a directed verdict on the issue of her sustaining a permanent injury. Initially, Appellee argued that the scars from her shoulder surgery would constitute a "permanent injury" in accordance with section 627.737(2)(c), but she finally agreed the scars would be an issue for the jury. However, Appellee argued that the "permanent anatomical change" inherent in shaving a small bit of bone was undisputed proof that she sustained a permanent injury. Appellants opposed the directed verdict, noting there was no evidence of the loss of any important bodily function, while pointing to the conflicting evidence discussed above. Appellants further argued below and now, that "permanent anatomical change" is nowhere to be found in section 627.737 as a description or definition of "permanent injury." Over Appellants' objections, the trial court directed a verdict that Appellee had sustained a permanent injury to her shoulder.

Below and on appeal, Appellants argued that the trial court erred in taking the issue of whether Appellee sustained a permanent injury from the

9

jury by directing a verdict in favor of Appellee. "Determinations about the permanency of an injury are *generally* made by juries." *Wald v. Grainger*, 64 So. 3d 1201, 1204 (Fla. 2011). "A directed verdict is proper [only] when the evidence and all inferences from the evidence, considered in the light most favorable to the non-moving party, support the movant's case as a matter of law and there is no evidence to rebut it." *Id*. at 1205. Given the directly conflicting evidence on permanency from Dr. Kugler and Dr. Halperin, the issue of whether she sustained a permanent shoulder injury, under *Wald*, was one for the jury.

In *Duclos v. Richardson*, plaintiff presented evidence from three physicians that her auto accident-related neck injury was permanent, while the defendant's fully qualified medical expert testified that she had not sustained a permanent injury or permanent aggravation of a pre-existing condition. 113 So. 3d 1001, 1002–03 (Fla. 1st DCA 2013). In the course of trial, plaintiff's motions for directed verdict on the issue of permanency were repeatedly denied. *Id.* at 1003. After the jury returned a verdict finding no permanent injury, the trial court granted plaintiff's renewed motion for directed verdict or motion for judgment notwithstanding the verdict (JNOV) finding the defense doctor's testimony to have been "incredulous, confusing, mistaken and not reasonable." *Id*.

The First District reversed, employing a de novo standard of review, which required it "to determine if any reasonable jury could have rendered the verdict that the auto accident in this case caused no permanent injury to the plaintiff's neck." *Id.* at 1003–04. Finding that the defense medical expert was clear and unwavering in his testimony that there was no permanent injury, the First District found it was clearly a jury issue and reversed. *Id.* at 1004.

The argument that any or all surgical treatment of an accident-related injury mandates a finding that plaintiff sustained a permanent injury has been made before and rejected. *See Little v. Davis*, 260 So. 3d 1139, 1146 (Fla. 1st DCA 2018) (noting ample evidence to support jury's finding of no permanent injury including neurosurgeon's testimony that surgeries were successful and plaintiff was continuing to improve); *Emanuele v. Perdue*, 693 So. 2d 1071 (Fla. 4th DCA 1997) (holding that as a result of auto accident, plaintiff had TMJ surgery, defense medical expert testified that plaintiff did not sustain a permanent injury, and "a fair reading of the expert's testimony would permit a jury to conclude that the appellee did not suffer permanent effects from her automobile accident" (quoting *Allstate Ins. Co. v. Edenfield*, 543 So. 2d 874 (Fla. 4th DCA 1989))).

Given the conflicting evidence presented in this case, the issue of whether Appellee sustained a permanent injury was for the jury. The trial court committed reversible error in granting a directed verdict on that issue in favor of Appellee.

Appellants' final argument, concerning the court's instruction to the jury "that Appellee had suffered a permanent injury" as opposed to Appellants' requested version "that Appellee had suffered a permanent injury *to her shoulder,*" is rendered moot by our decision.

Under the circumstances, we remand for a new trial on all issues other than fault for the collision, which Appellants have already conceded. We hope for all concerned that the third jury trial is indeed the proverbial charm. We provisionally grant Appellants' motion for appellate attorney's fees, with the trial court to determine whether Appellants are entitled to fees based upon the outcome of the case and the proposal for settlement which they served. We deny Appellee's motion for appellate attorney's fees.

AFFIRMED IN PART, REVERSED IN PART; REMANDED FOR NEW TRIAL.

MAKAR and HARRIS, JJ., concur.

12