971 So.2d 232 (2008)
Lucille T. CAMPBELL, Appellant,
v.
Darlene L. GRIFFITH, as Representative of the Estate of Stoner A. Griffith, Appellee.
No. 2D07-2493.
District Court of Appeal of Florida, Second District.
January 4, 2008.
*233 Steven George Lavely of Lavely, Whyte & Fischer, P.A., Bradenton, for Appellant.
Daniel P. Mitchell of Barr, Murman & Tonelli, P.A., Tampa, for Appellee.
STRINGER, Judge.
Lucille T. Campbell appeals from the final judgment entered on the jury's verdict in this personal injury action. We agree with Campbell that the jury's verdict on all issues other than future lost earning ability was against the manifest weight of the evidence; therefore, we reverse and remand for a new trial on the issue of damages other than future lost earning ability. This holding renders Campbell's other two issues moot.
On February 15, 2004, Campbell was driving in Bradenton when she was hit broadside on the passenger side of her vehicle by a vehicle driven by the defendant's decedent. Campbell immediately suffered pain in her left elbow. She was not treated at the scene, but she went to the emergency room later that day, where various diagnostic tests were performed. Ultimately, Campbell was given pain medication and a sling. She wore the sling for approximately two weeks before her elbow pain resolved.
Within several weeks of the accident, Campbell noticed that her left arm occasionally felt tingly, numb, and cold. These feelings were intermittent, and Campbell did not initially seek treatment for this problem or attribute it to the accident. However, on October 2, 2004, Campbell was rushed to the emergency room when her left arm became cold and hard. She was found to have a blood clot blocking the flow of blood to her left arm. After several diagnostic procedures, doctors determined that the clot was the result of an aneurysm in Campbell's subclavian artery near her left shoulder. Campbell underwent a surgical procedure to place a stent in the subclavian artery as a result. In August 2005, the stent failed, and Campbell required a second surgical procedure because of the aneurysm. Both Campbell's treating doctor and the defense's medical expert testified that Campbell would likely need future surgery on the subclavian artery as a result of the aneurysm.
At trial, both Campbell's treating doctor and the defense's medical expert, who had *234 performed a compulsory medical examination on Campbell, testified that while subclavian aneurysms can result from various medical conditions, Campbell suffered from none of those conditions. Because of this, both doctors testified that Campbell's aneurysm was caused by the auto accident within a reasonable degree of medical probability.[1] Both doctors also testified that the delay of seven months between the accident and the onset of severe symptoms was not unusual with a vascular injury of this nature. Both doctors further testified that the injury was permanent. Griffith did not significantly impeach the testimony of either of these medical witnesses, nor did Griffith present any contradictory medical evidence.
At the time of the accident and through the time of trial, Campbell was employed by WalMart. Campbell testified that while she had lost time from work due to the treatment for her aneurysm, she had used her sick time and thus had no claim for past lost wages. However, Campbell testified that after the accident, she was no longer able to work as a stocker and she had been moved to a different position with a concomitant reduction in pay. Because of this, Campbell sought damages for lost future earning ability. However, at trial, Campbell admitted that she had continued to work as a stocker from the time of the accident in February 2004 until November 2005, when she had suffered a stroke. Only after the stroke was her employment changed and her pay reduced.
After the close of the evidence, the trial court granted Campbell's motion for directed verdict on the issue of permanence. However, the trial court denied Campbell's motion on the issue of causation. Despite this ruling, however, the trial court instructed the jury as follows:
The parties have agreed and the Court now instructs you as a matter of law that at the time of the February 15, 2004, accident, Stoner A. Griffith was negligent and that such negligence was a legal cause of injury sustained by Plaintiff Lucille T. Campbell.
The issue for your determination on the claim of Lucille T. Campbell is what damages were suffered by Lucille T. Campbell as a result of the February 15th, 2004 accident.
Moreover, the verdict form did not ask the jurors to determine whether Griffith's negligence had caused Campbell's injuries. Instead, the verdict form simply asked the jurors to determine "the amount of any damages sustained by Plaintiff, LUCILLE T. CAMPBELL" for past medical expenses, the present value of any damages sustained for future medical expenses, the present value of any damages for future lost earning ability, and the amount of damages sustained for pain and suffering.
During closing arguments, defense counsel argued that the jury was free to accept or reject any expert testimony, and he argued that the jury could find that the delayed onset of the severe symptoms of the aneurysm meant that it was not caused by the accident. While not specifically argued, defense counsel did not dispute that, at a minimum, Campbell suffered an injury to her elbow in the accident and that she endured pain and inconvenience for approximately two weeks as a result of that injury. Campbell argued that all of her medical treatment, including that for *235 her stroke, resulted from the auto accident.
After deliberations, the jury awarded Campbell approximately half of her past medical bills. It awarded nothing for future medical expenses, future lost earning ability, past pain and suffering, or future pain and suffering. Campbell subsequently moved for a new trial on various grounds, including that the verdict was legally inadequate and that it was against the manifest weight of the evidence. The trial court denied this motion and later entered a judgment on the jury's verdict. In this appeal, Campbell contends that the trial court abused its discretion when it denied her motion for new trial. We agree in part.
The standard of review of the trial court's denial of a motion for new trial was recently discussed in detail by the Fourth District.
The appropriate standard of review applied to a trial court's denial of a motion for a new trial is whether the trial court abused its discretion. See Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999). Brown articulates the test for determining whether the trial judge committed an abuse of discretion and provides that:
[A]n appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion.

Id. at 497-98. Furthermore, in Dewitt v. Maruhachi Ceramics of America, Inc., 770 So.2d 709, 711 (Fla. 5th DCA 2000), the Fifth District explained that:
The question for an appellate court is not whether or not the verdict was contrary to the manifest weight of the evidence presented below. Indeed that is the question addressed to the trial court on motion for a new trial. Rather, the appellate court is limited to considering whether or not the trial court abused its discretion in denying a new trial. In order for [the appellate court] to reach that conclusion, the evidence must be clear and obvious, and not conflicting . . .
(citations and footnote omitted). See also K-Mart Corp. v. Collins, 707 So.2d 753, 755 (Fla. 2d DCA 1998) (recognizing that where there is conflicting evidence, the weight to be given that evidence is within the province of the jury).
Despite this deferential standard, "an appellate court should reverse a jury verdict when there is no rational basis in the evidence to support the verdict of the jury." Sifford v. Trans Air, Inc., 492 So.2d 407, 408 (Fla. 4th DCA 1986). "[W]here the testimony on pivotal issues of fact is not contradicted or impeached in any respect, and no conflicting evidence is introduced, these statements of fact can not be wholly disregarded or arbitrarily rejected." Merrill Stevens Dry Dock Co. v. G & J Invs. Corp., Inc., 506 So.2d 30, 32 (Fla. 3d DCA 1987).
Izquierdo v. Gyroscope, Inc., 946 So.2d 115, 117-18 (Fla. 4th DCA 2007).
Here, we agree with the trial court that there was a rational basis for the jury to award Campbell nothing on her claim for future lost earning ability. Campbell's undisputed testimony was that after the accident she continued to work as a stocker until after her stroke in November 2005. Because the jury could have found, based on the evidence presented, that Campbell's "demotion" was due to limitations *236 imposed by the stroke rather than by the aneurysm and could have found that the stroke was not related to the aneurysm, the trial court did not abuse its discretion in denying Campbell's motion for new trial on this element of damages.
As to the other elements of damages, however, we can discern no rational basis that would support the jury's verdict based on the evidence presented. Griffith did not dispute that Campbell's elbow injury was related to the accident, did not dispute that the treatment for this injury was reasonable and necessary, and did not dispute that Campbell suffered pain and inconvenience due to the elbow injury. Based on this evidence alone, the jury's zero verdict for past pain and suffering is inadequate as a matter of law. Ellender v. Bricker, 967 So.2d 1088 (Fla. 2d DCA 2007) (holding that when "the evidence is undisputed or substantially undisputed that a plaintiff has experienced and will experience pain and suffering as a result of an accident, a zero award for pain and suffering is inadequate as a matter of law") (quoting Dolphin Cruise Line, Inc. v. Stassinopoulos, 731 So.2d 708, 710 (Fla. 3d DCA 1999)); cf. Allstate Indem. Co. v. Clark, 736 So.2d 1, 2 (Fla. 2d DCA 1998) (holding that a verdict that fails to award noneconomic damages, despite awarding economic damages for injuries arising out of the accident, is "neither inconsistent nor inadequate unless the evidence of intangible damages is entirely uncontroverted" (emphasis added)).
Moreover, in light of the evidence presented at trial, the jury's verdict on past and future medical expenses and past and future noneconomic damages is against the manifest weight of the evidence. We recognize that, as Griffith argued at trial, a jury is free to accept or reject an expert's testimony or to give it such weight as it deserves considering the witness's qualifications, the stated basis for the witness's opinion, and all of the evidence in the case. Easkold v. Rhodes, 614 So.2d 495, 497-98 (Fla.1993); Shaw v. Puleo, 159 So.2d 641, 643-44 (Fla.1964); State Farm Mut. Auto. Ins. Co. v. Orr, 660 So.2d 1061, 1062 (Fla. 4th DCA 1995). However, when medical evidence on permanence or causation is undisputed, unimpeached, or not otherwise subject to question based on other evidence presented at trial, the jury is not free to simply ignore or arbitrarily reject that evidence and render a verdict in conflict with it. See, e.g., Holmes v. State Farm Mut. Auto. Ins. Co., 624 So.2d 824, 825 (Fla. 2d DCA 1993); Jarrell v. Churm, 611 So.2d 69, 70 (Fla. 4th DCA 1992).
Here, both Campbell's treating doctor and the defense medical expert testified that her subclavian aneurysm was a permanent injury caused by the auto accident and that there was no other medical explanation for its etiology. In light of this undisputed and unimpeached evidence, the jury's verdict awarding no future medical expenses and no past or future noneconomic damages was against the manifest weight of the evidence. Accordingly, the trial court abused its discretion by not granting a new trial on these elements of damages.
Based on the evidence presented at trial, we affirm the judgment in favor of Griffith on the issue of Campbell's future lost earning ability claim. However, we reverse and remand for a new trial on the issues of past and future medical expenses and past and future noneconomic damages.
Affirmed in part; reversed in part; and remanded for further proceedings.
ALTENBERND and WHATLEY, JJ., Concur.
NOTES
[1] While neither doctor specifically referred to this as a "seatbelt injury," Campbell's treating doctor, Dr. Pizzo, noted that the subclavian artery lies under the collarbone at the point where a driver's seatbelt would cross the left shoulder. He also testified that a subclavian aneurysm could result from the sudden deceleration caused by hitting a seatbelt in a collision.