NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CLEMENTE ARIAS,                           )
                                          )
          Appellant,                      )
                                          )
v.                                        )          Case No. 2D17-4469
                                          )
MARY ANNA PORTER; ANGELIQUE               )
FLORES; and AMARILYS ARIAS,               )
                                          )
          Appellees.                      )
                                          )
_____    )

Opinion filed May 29, 2019.

Appeal from the Circuit Court for
Hillsborough County; Elizabeth G. Rice,
Judge.

Kathryn E. Lee and Kevin Britt Woods of
Woods Trial Law, Tampa, for Appellant.

Ezequiel Lugo of Banker Lopez Gassler
P.A., Tampa, for Appellees Mary Anna
Porter and Angelique Flores.

No appearance for remaining Appellee.


SALARIO, Judge.

          In this personal injury action against Mary Anna Porter and Angelique

Flores arising from an automobile accident, a jury awarded Clemente Arias damages for

past and future medical expenses but no past or future noneconomic damages, which

here were argued to consist principally of pain and suffering.  Mr. Arias appeals from

that judgment and challenges an order of the trial court denying his motion for additur on grounds that the jury's zero verdict on noneconomic damages—both past and future—was inadequate. We reverse the zero verdict for past noneconomic damages because, under our court's precedents, that verdict was inadequate as a matter of law. We affirm as to future pain and suffering, however, because the trial court was within its discretion to conclude that the jury fairly resolved that question against Mr. Arias based on the disputed evidence at the trial.

I.

The accident and lawsuit. After a trip to the grocery store with his daughter, Mr. Arias stopped the car that he was driving at a red light. At the same time, Ms. Flores, who was driving a pickup truck owned by Ms. Porter, made an illegal left turn into the intersection. Ms. Flores hit another car that was in the intersection, which caused that car to hit the one Mr. Arias was driving. Mr. Arias did not receive medical treatment at the scene. Nor did he go to the hospital after the accident.

Almost four years later, Mr. Arias filed a complaint asserting a claim for negligence against Ms. Flores, a claim that Ms. Porter was vicariously liable for Ms. Flores's negligence under the dangerous instrumentality doctrine, and a claim against Ms. Porter for negligent entrustment.[1] Mr. Arias's wife joined as a plaintiff and asserted a claim against Ms. Flores and Ms. Porter for loss of consortium. The case proceeded through discovery and headed toward a jury trial.

As the facts developed in pretrial proceedings, the core of Mr. Arias's claims became that Ms. Flores negligently caused the accident and that the accident, in

---

[1]The complaint also asserted claims against other parties that were dropped prior to trial and are not relevant here.

turn, injured his neck and back and resulted in damages for medical expenses and pain and suffering. Ms. Flores and Ms. Porter admitted that Ms. Flores was negligent and that her negligence was the cause of the accident. And they did not assert that Mr. Arias was comparatively negligent. So the case went to trial in streamlined form; all the jury had to figure out were the damages, if any, that the accident caused Mr. Arias to suffer.

Mr. Arias's trial theory and evidence. Mr. Arias's theory at trial was that the accident caused both a permanent injury to his neck and a permanent aggravation of an already-existing condition in his back. He testified that he started to have pain in his neck and back in the days immediately following the wreck. Mr. Arias said he had not experienced neck pain before. After several days, the pain became so severe that his wife got him an appointment with orthopedic doctors he had previously seen for already-existing and ongoing back problems.

The doctor's visit led to MRIs of the neck and back which showed herniations of two discs in the neck. More conservative treatments did not resolve Mr. Arias's complaints of neck pain. Three years and ten months after the accident, Mr. Arias had surgery to replace the two herniated discs. The surgery resulted in a significant reduction in pain, but Mr. Arias continues to deal with it. There was evidence from Mr. Arias's doctors that he will need future treatment, likely including a future surgery. There was also evidence from Mr. Arias's doctors that his neck problems were causally related to the accident and that they would be permanent.

In addition to the neck pain, Mr. Arias complained of back pain after the accident. That, however, was not new. Mr. Arias suffered with back problems for years before the accident and had gone through three back surgeries, the last being roughly

- 3 -

one year before the accident. Mr. Arias complained that after the accident, his back pain was substantially worse and was radiating into his legs. The pain was treated with various therapies, including epidural steroid injections performed under anesthesia and radiofrequency ablations. Mr. Arias's current treating physician opined that Mr. Arias was suffering increased pain because the accident aggravated an existing back condition, that the aggravation would be permanent, and that he would continue to need treatment in the future, including a likely surgery on the back.

Mr. Arias argued that he was entitled to recover $68,514.19 for past medical expenses. The evidence of Mr. Arias's future medical expenses ranged from as little as $173,711 to as much as $2,500,000. The potential future medical expenses included the cost of future neck surgery at $120,000, future back surgery at $100,000, and many different and recurring treatments for pain in both the neck and the back. In view of the testimony that his injuries were permanent, Mr. Arias also sought noneconomic damages to compensate him for past and future pain and suffering. See § 627.737(2), Fla. Stat. (2011). In closing argument, Mr. Arias's counsel told the jury to award pain and suffering damages in an amount it determined to be appropriate in light of Mr. Arias's life expectancy of twenty-five to twenty-seven years.

Ms. Flores and Ms. Porter's trial theory and evidence. The theory Ms. Flores and Ms. Porter pursued in defense of the case was that the accident did not cause a permanent injury to Mr. Arias's back or neck and that any significant medical expenses and pain and suffering were attributable not to the accident but rather to conditions Mr. Arias had at the time of the accident or suffered after it. This theory involved an attempt to show that Mr. Arias's complaints of ongoing injury and pain were

- 4 -

not credible.  The chief evidentiary components supporting the defense theory were as follows:

- *Evidence of preexisting degeneration in the neck and back:*  The evidence showed that Mr. Arias suffered from degenerative disc disease in his back beginning at least in 1997, with complaints of pain radiating into his legs.  Mr. Arias worked as a mechanic, which involved a lot of heavy lifting and stooping and took a toll on his body over the course of years.  He had three surgeries on his back in the years before the accident and, after the third, was no longer able to work as a mechanic.  The MRIs taken shortly after the accident also showed degeneration in the neck, although it was less severe than in the back and whether it could explain Mr. Arias's complaints of neck pain was disputed.

- *Evidence of other car accidents:*  There was evidence that Mr. Arias was in a car accident in the early 1990s that caused him pain through his whole body.  There was also evidence that Mr. Arias was in a car wreck three and one-half years after the accident at issue here—and just three months before he had surgery on his neck.

- *Evidence that the accident may not have been severe:*  Mr. Arias did not receive medical treatment at the scene and did not go to the hospital.  There was testimony that at the scene he said he was okay and did not appear to be injured.  There was also testimony that Mr. Arias helped put groceries in his son-in-law's car at the accident scene.

- *Evidence disputing Mr. Arias's subjective complaints of neck pain:*  In an application for social security disability benefits submitted six months after the accident, Mr. Arias complained of pain and other symptoms related to degenerative disc disease in his back and attributed that pain to his work as a mechanic.  He made no mention of any pain in his neck.  There was also evidence of substantial gaps in Mr. Arias's treatment for back and neck pain— which Ms. Flores and Ms. Porter argued demonstrated the absence of such pain—as well as some medical records stating that Mr. Arias was not complaining of neck pain.

- *Evidence that Mr. Arias's back pain was similar both before and after the accident:*  There was evidence that Mr. Arias continued to have back pain after his last surgery, that his back pain six months after the accident was similar to his pain before it, that his medication after the accident was the same as his medication before the accident, and that Mr. Arias himself attributed his ongoing back pain not to the accident but rather to his work history as a mechanic.

- *Expert testimony on causation, permanency, and damages:*  A defense medical expert opined that Mr. Arias did not suffer a permanent injury to his

neck or back as a result of the accident and that the accident would not cause Mr. Arias to incur any future medical expenses. He further opined that Mr. Arias's complaints of pain and course of seeking treatment in the days following the accident were consistent with a sprain-strain injury at the neck, which is common in this kind of accident, which is temporary, and which should have resolved within eight to twelve weeks of the accident—which here coincided roughly with one of the gaps in Mr. Arias's treatment referred to above. The expert opined that Mr. Arias's ongoing symptoms were the result of already-existing degeneration of the neck and spine.

Based on this and other evidence, Ms. Flores and Ms. Porter argued that to the extent the accident caused any injury to Mr. Arias, it was only a sprain-strain injury to the neck that was not permanent. They asserted that Mr. Arias was entitled to no more than $7000 for past medical expenses for treatment of the sprain-strain, nothing for future medical expenses, and nothing for noneconomic damages. They argued that to the extent the jury decided to award something for pain and suffering, the total verdict (inclusive of medical expenses) should not exceed $50,000.

The jury's verdict and Mr. Arias's motion for additur. The jury was presented with interrogatories about causation and damages, and its answers did not conform to either side's theory of the case. The jury found that (1) Ms. Flores's negligence was a legal cause of injury to Mr. Arias; (2) that Mr. Arias had damages of $50,000 for past medical expenses, less than the $68,514.19 he asked for and more than the $7000 the defendants argued for; and (3) that Mr. Arias had damages of $200,000 for future medical expenses, at the very low end of the range his evidence supported ($173,711 to $2,500,000) and more than the zero sum argued for by the defendants. The jury also found that Mr. Arias suffered a permanent injury, although it was not asked to and did not specify whether the permanent injury was in the neck, the back, or both. The jury awarded Mr. Arias nothing for past or future noneconomic damages.

- 6 -

Mr. Arias filed a motion for additur under section 768.043, Florida Statutes (2016), arguing that the jury's zero verdict for damages for past and future noneconomic damages was inadequate in light of the evidence presented at trial. After hearing argument, the trial court denied the motion reasoning that the evidence as to whether Mr. Arias had noneconomic damages caused by the accident was disputed and, under those circumstances, that it would be error to "veto the jury verdict by granting a motion for additur." This is Mr. Arias's timely appeal.

II.

Section 768.043 governs additur in motor vehicle cases and provides in relevant part that "it shall be the responsibility of the court, upon proper motion, to review the amount of" the jury's "award to determine if such amount is clearly . . . inadequate in light of the facts and circumstances" and, if it finds the amount inadequate, to order an additur. § 768.043(1). A trial court determines whether a verdict is inadequate by reference to five statutory criteria: (1) whether the verdict was infected by "prejudice, passion, or corruption"; (2) whether the jury ignored the evidence or misconceived the merits; (3) whether the jury took improper elements of damages into account or engaged in speculation; (4) whether the award bears a reasonable relation to the damages proved and the injury suffered; and (5) whether the award is supported by the evidence and could have been logically determined by reasonable people. See § 768.043(2)(a)-(e). This assessment obviously involves a sense of touch that can be delivered only by the trial judge that heard and saw the evidence. Accordingly, we review an order denying a motion for additur under the deferential abuse of discretion standard. See § 768.043(3) ("It is the intent of the Legislature to vest the trial courts of this state with discretionary authority to review the amounts of

damages awarded by a trier of fact . . . ."); Sukraj v. Phoeung, 241 So. 3d 911, 912 (Fla. 2d DCA 2018) ("This court reviews the denial of a motion for new trial or additur for an abuse of discretion.").  We may reverse only where the trial court has made a decision that fails the test of reasonableness.  See generally Canakaris v. Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980) (discussing the reasonableness test for review of the discretionary decisions of a trial judge).

The crux of Mr. Arias's argument on appeal is that because the jury found in his favor on causation and permanency and awarded damages for past and future medical expenses, it was required under the circumstances to also award past and future noneconomic damages.  Applying our court's precedents to the trial court's order here, we reverse the trial court's order denying an additur with respect to past noneconomic damages because that verdict was inadequate as a matter of law and affirm the order with respect to future noneconomic damages.

The supreme court laid the groundwork for our court's most recent decisions on this subject in Allstate Insurance Co. v. Manasse, 707 So. 2d 1110 (Fla. 1998).  There, a jury verdict found a permanent injury and awarded past and future medical expenses and past noneconomic damages but awarded nothing for future noneconomic damages.  Id. at 1111.  The plaintiff filed a motion for a new trial arguing that the verdict was inadequate, which the trial court denied.  Id.  The Fourth District reversed, holding that the future noneconomic damages verdict was inadequate in light of the jury's findings of permanent injury and its award of future medical expenses.  Id. (citing Allstate Ins. Co. v. Manasse, 681 So. 2d 779, 784 (Fla. 4th DCA 1996)).  It certified to the supreme court the question of whether a verdict is inadequate as a

- 8 -

matter of law when a jury finds permanency and awards past and future medical expenses but fails to award future noneconomic damages.  Id. at 1110.

The supreme court answered that question in the negative and quashed the Fourth District's opinion.  Id. at 1112.  Holding that a jury is not required as a matter of law to award damages for future pain and suffering simply because it found a permanent injury and awarded future medicals, the court quoted approvingly from Judge Klein's dissent in the Fourth District, which posited a difference between past and future noneconomic damages.  Id. at 1111-12.  He explained:

> Future damages are, by nature, less certain than past damages.  A jury knows for a fact that a plaintiff has incurred past medical expenses, and, when it finds those expenses to have been caused by the accident there is generally something wrong when it awards nothing for past pain and suffering.  The need for future medical expenses is often in dispute, however, as it was here.  It does not necessarily therefore follow . . . that an award of future medical expenses requires an award of noneconomic damages.

Id. (emphasis added) (quoting Manasse, 681 So. 2d at 785 (Klein, J., dissenting)).

The supreme court further held that the trial court did not abuse its discretion in denying the motion for new trial on the facts of the case.  Id. at 1111. There, the defendant presented evidence disputing permanency, disputing that the plaintiff would need to have future care or would necessarily experience pain, and suggesting that her pain could be explained by reasons unrelated to the accident.  Id. The trial court held that "[t]he jury could reasonably have concluded . . . that future pain and suffering was either not proven by the greater weight of the evidence or was not compensable."  Id.  On the facts presented, the supreme court found no abuse of discretion.  Id.

Since <u>Manasse</u>, our decisions with respect to past and future noneconomic damages have hinged on whether the evidence of such damages is substantially undisputed (if yes, then a zero verdict is inadequate as a matter of law; if no, then it is not) and have simultaneously suggested that an award of past (as distinguished from future) noneconomic damages is required when a jury finds permanency and awards past medical expenses. For example, in <u>Allstate Insurance Co. v. Campbell</u>, 842 So. 2d 1031, 1034-35 (Fla. 2d DCA 2003), we considered whether a jury verdict in an automobile negligence case that awarded past and future medical expenses, but no past or future noneconomic damages, was inadequate. After quoting Judge Klein's <u>Manasse</u> dissent, we held that "[s]ince the jury found that the Campbells suffered injuries that required treatment . . . <u>as evidenced by the award of past medical costs</u>, the jury's failure to award <u>even nominal past economic damages</u> was not supported by the weight of the evidence and must be reversed." <u>Id.</u> at 1034-35 (emphasis added). In contrast, we held that the jury was not required to award anything for future noneconomic damages, even though it also awarded future medical expenses, because the evidence of future noneconomic damages was "disputed" and the jury's award of future medical expenses was minimal. <u>Id.</u> at 1034 n.1, 1035.

Five years later in <u>Ellender v. Bricker</u>, 967 So. 2d 1088, 1093 (Fla. 2d DCA 2007), we addressed the denial of a motion for additur or new trial in an automobile negligence case in which the jury found causation and permanency, awarded past and future medical expenses of about half of what the plaintiff asked for, and awarded nothing for past or future noneconomic damages. <u>Id.</u> at 1090, 1093. At the outset, we stated that "where 'the evidence is undisputed or substantially undisputed that a plaintiff has experienced and will experience pain and suffering . . ., a zero award

- 10 -

for pain and suffering is inadequate as a matter of law.' " Id. at 1093 (quoting Dolphin Cruise Line, Inc. v. Stassinopoulos, 731 So. 2d 708, 710 (Fla. 3d DCA 1999)).

But we then did two things that suggest that we also view past noneconomic damages differently from future noneconomic damages in this context. First, we quoted our decision in Campbell to show that when a jury awards past medicals, it must at least award nominal past noneconomic damages and reversed the trial court's order on past noneconomic damages. Id. Second, we began our discussion of future noneconomic damages by quoting Manasse to explain that while there is "generally something wrong" with a verdict that finds permanency and awards medical expenses but fails to award past noneconomic damages, that is not true with respect to future noneconomic damages. Ellender, 967 So. 2d at 1093 (quoting Manasse, 707 So. 2d at 1111-12). The key is whether the evidence of those damages is substantially undisputed. Id. at 1093.

We reversed the denial of relief with respect to future noneconomic damages because the trial yielded "undisputed evidence of permanent injury and a need for treatment in the future." Ellender, 967 So. 2d at 1093, 1094 (citing Garrett v. Miami Transfer Co., 964 So. 2d 286, 291 (Fla. 4th DCA 2007)). In particular, the trial evidence was undisputed that the plaintiff had permanent injuries to the back and neck that would require future medical treatment and would produce pain—even a defense expert corroborated that much—such that an award of at least some future pain and suffering damages was required. Id. at 1094. Applying Ellender to a similar set of facts, we reached the same result the next year in Campbell v. Griffith, 971 So. 2d 232, 236 (Fla. 2d DCA 2008), relying solely on the reasoning that the evidence on both past and future noneconomic damages was substantially undisputed.

- 11 -

And recently, in Sukraj, the plaintiff in an automobile accident case alleged permanent injury to his shoulder, neck, and back. 241 So. 3d at 912. A jury found permanency and awarded in excess of $53,000 for past medicals and $50,000 for future medicals but nothing for past or future noneconomic damages. Id. The trial court denied the plaintiff's motion for additur or a new trial. Id. We reversed with respect to past noneconomic damages because "the evidence that Sukraj had suffered past pain and suffering in his shoulder as a result of the accident was undisputed." Id. In reaching that conclusion, we did not say that we were affording any legal significance to the fact that the jury had found permanency and awarded future medicals. We affirmed as to future noneconomic damages "because the evidence that Sukraj had suffered past pain and suffering for the injuries to his neck and back and would experience future pain and suffering as a result of the accident was disputed at trial." Id.

We now apply these precedents to the circumstances of this case.

Past noneconomic damages. As the foregoing shows, our decisions on past noneconomic damages can be read to support two propositions: (1) that a zero verdict for past noneconomic damages is inadequate as a matter of law when the trial evidence of the existence of such is substantially undisputed and (2) that when a jury finds that the plaintiff suffered injuries that required treatment as evidenced by an award of past medical expenses, a zero award cannot stand. It is not necessarily clear how these concepts relate to one another—whether each operates independently, whether one is subordinate to another, or whether the cases focusing an award of past medicals reflect no more than Judge Klein's observation in Manasse that there is "generally something wrong," 681 So. 2d at 785 (Klein, J., dissenting), with a verdict that awards past medicals and no past noneconomic damages instead of a hard-and-fast rule. Cf.

- 12 -

Gebis v. Oaks Condo. Ass'n, 937 So. 2d 1284, 1286 (Fla. 4th DCA 2006) ("However, simply because 'there is generally something wrong' when a jury awards damages for past medical expenses but nothing for past pain and suffering does not mean there is always something wrong."). We need not resolve the matter here, however, because the zero verdict in this case fails as a matter of law under either measure.

Clearly, this is a case in which the jury recognized an injury that required treatment as evidenced by the award of past medicals, such that this case would fall within the scope of cases like Campbell and Ellender that suggest an award of at least nominal past noneconomic damages is required when the jury finds permanency and awards past medicals. Further, this is also a case where, at a minimum, the trial evidence of at least some past noneconomic damages resulting from a neck injury was substantially undisputed. Mr. Arias and his family members testified that he experienced the onset of pain in the neck within days after the incident. Although the defense through cross-examination, impeachment, and affirmative evidence raised substantial questions concerning the permanency of any injury and whether the accident caused Mr. Arias any ongoing neck pain, there was no dispute that Mr. Arias had at least some pain in the neck in the days immediately following the accident and that he sought treatment for that pain. Moreover, the defense medical expert testified that Mr. Arias's subjective complaints were consistent with a sprain-strain injury and that sprain-strain injuries are typical consequences of the type of accident involved here. Cf. Ellender, 967 So. 2d at 1094 (finding evidence of future noneconomic damages substantially undisputed where, among other things, a defense expert agreed that the plaintiff would suffer permanent symptoms and complaints). In closing, defense counsel did not seriously contend that Mr. Arias had no neck pain as a result of the accident but

- 13 -

merely argued that the jury would be "well within its rights" and "entitled" to say so. Under these circumstances, that Mr. Arias experienced some pain and suffering because of the accident was not substantially disputed. As a matter of law, then, it was error to deny the motion for additur to the extent it challenged the jury's award of no past noneconomic damages. See Sukraj, 241 So. 3d at 912; Griffith, 971 So. 2d at 236. This holding places our decision in this case in line with the decisions we have reached in every other additur or new trial opinion in an automobile case in which there has been an award of past medical expenses and a finding of permanency since the supreme court decided Manasse—reversing a zero award of past noneconomic damages and requiring an award of at least nominal past noneconomic damages.

At oral argument, counsel for Ms. Flores and Ms. Porter contended that the jury could have properly awarded no past noneconomic damages for pain and suffering related to a neck injury because the evidence of whether any injury to Mr. Arias's neck was permanent was disputed. That is of no legal moment. Section 627.737(2), which requires permanency as a condition to a plaintiff's recovery of noneconomic damages in automobile accident cases, does not say that a plaintiff may only recover noneconomic damages attributable to permanent injuries; it says instead that a plaintiff may not recover noneconomic damages unless his injury "consists in whole or in part" of a permanent injury. See § 627.737(2)(b), Fla. Stat. (2011). In view of that statutory language, the supreme court has held that "as long as part of the bodily injury arising out of the motor vehicle accident involves a permanent injury . . . the plaintiff can recover noneconomic damages relating to his pain, suffering, mental anguish, and inconvenience for all of the injuries related to the accident." Wald v. Grainger, 64 So. 3d 1201, 1207 (Fla. 2011); see also Rolon v. Burke, 112 So. 3d 118,

- 14 -

120 (Fla. 2d DCA 2013) (holding that a jury properly awarded noneconomic damages for all injuries suffered by a plaintiff where the evidence established that one was permanent). Here, the jury found that there was a permanent injury, and the evidence of noneconomic damages associated with a neck injury—whether permanent or not—was substantially undisputed.

Future noneconomic damages. The evidence concerning any future noneconomic damages Mr. Arias would suffer was in substantial conflict. Mr. Arias presented a case through his own testimony and that of his family members and doctors from which the jury could have inferred that he had permanent injuries to both the neck and the back and would continue to suffer pain from both into the future. Ms. Flores and Ms. Porter, in contrast, produced evidence through cross-examination and their own expert through which the jury could have inferred that Mr. Arias's complaints of ongoing pain in the neck and back were not credible or that any pain he would suffer in the future was the consequence of already-existing conditions or subsequent events. Given these conflicts in the evidence, this case fits neatly into the footprint of Manasse because, as in that case, the jury here "could reasonably have concluded . . . that future pain and suffering was either not proven by the greater weight of the evidence or was not compensable." See 707 So. 2d at 1111; see also Smith v. Houston, 551 So. 2d 551, 551 (Fla. 2d DCA 1989) ("Evidence concerning Mrs. Smith's medical history, along with conflicting expert medical opinion and challenges to Mrs. Smith's credibility, could have led the jury to reject claims for pain and suffering . . . . The jury could have disbelieved the testimony or attributed these damages to Mrs. Smith's preexisting condition."); Fitzgerald v. Molle-Teeters, 520 So. 2d 645, 648 (Fla. 2d DCA 1988) ("A jury could disbelieve a plaintiff's testimony regarding pain and suffering or attribute the

- 15 -

pain to a congenital condition."). Any conflicts in the evidence—whether Mr. Arias was credible, whether Mr. Arias's arguable future neck pain should be attributed to the accident or to degeneration or to something else, and whether any future pain Mr. Arias would have in his neck and back could be attributed to the accident among them—were for the jury to resolve. See Sukraj, 241 So. 3d at 912 ("And 'where there is conflicting evidence [concerning noneconomic damages], the weight to be given that evidence is within the province of the jury.' " (quoting Griffith, 971 So. 2d at 235)).

Indeed, one can make logical sense out of the verdict on future noneconomic damages based on the evidence presented. The jury was presented with two theories of permanent injury—permanent injury to the neck and permanent aggravation of a preexisting condition in the back. For instance, the jury could have found, consistent with the evidence, (1) that Mr. Arias suffered a temporary sprain-strain injury to the neck that would have resolved within three months of the accident and (2) that Mr. Arias suffered a permanent aggravation of the preexisting injury to the back. Based on the evidence suggesting that plaintiff's pain and suffering from the back injury was not materially different from what it was before the accident, the jury could also have found that Mr. Arias failed to prove his noneconomic damages—the pain and suffering he might suffer in the future—by a preponderance of the evidence. That, in turn, could have led the jury to award future medical expenses without awarding anything additional for future noneconomic damages.[2]

---

[2]Mr. Arias argues that the total jury award of $250,000 was so close to his economist's total award of $242,000—which included a future neck surgery—that the jury must have intended to find a permanent injury to the neck. While this is a reasonable interpretation of the record, it is not the only reasonable interpretation of the record. Given the breadth of Mr. Arias's evidence on future medicals—a wide variety of surgeries and treatments ranging between $173,711 and $2,500,000—it is not possible

Mr. Arias points out that the jury's award of $200,000 in future medical expenses was not minimal, as was the case in Campbell.  To be sure, that is true as an absolute matter—$200,000 is a lot of money—but not as a relative one.  Mr. Arias presented evidence of future medical expenses up to $2,500,000, and the jury awarded only eight percent of that.  Furthermore, although the decision in Campbell referred to the fact that the jury award of future medical expenses was minimal, we have never held that a jury must award future noneconomic damages when it awards more-than-minimal future medical expenses.  Given the relationship of the amount awarded for future medical expenses to the amount requested and the conflicting evidence on causation, permanency, and damages, the jury could have determined that Mr. Arias simply failed to prove those future noneconomic damages caused by the accident by the greater weight of the evidence.

Based on the record in this appeal, then, it was well within the zone of reasonableness for the trial court to conclude that the jury's zero verdict on future noneconomic damages was consistent with the evidence and merits of the case, bore a reasonable relationship to the damages and injuries proved, and could be logically adduced by reasonable people.  See § 768.043(2)(b), (d), (e).[3]  The trial court did not abuse its discretion when it denied Mr. Arias's motion for additur as to future noneconomic damages.

III.

---

to say with certainty what the jury decided.  And no one has challenged the jury's award of future medical expenses in this appeal.

[3]Mr. Arias did not argue in the trial court and does not argue here that the verdict was indicative of passion, prejudice, or corruption or that the jury considered improper elements of damage or speculation.  See § 768.043(2)(a), (c).

- 17 -

For the foregoing reasons, we conclude that the trial court erred by denying Mr. Arias's motion for additur as to past noneconomic damages and therefore reverse that portion of the judgment awarding no past noneconomic damages. However, we find no error in the trial court's denial of the motion for additur as it relates to future noneconomic damages and affirm that portion of the final judgment. We also affirm the other portions of the final judgment without further comment. We remand the case to the trial court for further proceedings consistent with this opinion. See § 768.043(1) ("If the court finds that the amount awarded is clearly excessive or inadequate, it shall order a remittitur or additur, as the case may be. If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of damages only."); Ellender, 967 So. 2d at 1094 (remanding for further proceedings under section 768.043(1) after reversing the final judgment based on the erroneous denial of a motion for additur of past and future noneconomic damages).

Affirmed in part; reversed in part; remanded.

MORRIS and BLACK, JJ., Concur.